## 12289

### BRADFORD v. F. W. WOOLWORTH CO. ET AL.

#### (140 S. E., 105)

1. APPEAL AND ERROR—JUDGMENT WILL NOT BE REVERSED FOR INSUFFICIENCY OF EVIDENCE, IF THERE WAS ANY EVIDENCE REQUIRING SUBMISSION OF CASE TO JURY.—If there was any evidence requiring submission of case to jury, judgment will not be reversed on ground that evidence was insufficient to sustain verdict.

2. NEGLIGENCE—NEGLIGENCE IN OILING FLOOR OF STORE CAUSING INJURY TO CUSTOMER HELD FOR JURY.—In action by customer for injury sustained as result of fall from slipping on oiled floor of defendant's store, evidence of defendant's negligence in excessive use of oil *held* for jury.

3. Negligence—Proprietor of Store Held Required to Furnish Reasonably Safe Place for Customer.—Where defendant was owner in charge of store and plaintiff as customer was invited to go there and trade and was injured as result of fall from slipping on oiled floor of store, for purpose of determining defendant's liability, rule requiring master to furnish a reasonably safe place for his servant was applicable. (Per Watts, C. J.)

4. Negligence—Merchant is not Liable for Injuries to Customers from Defects in Premises, in Absence of Knowledge of Defect.—Merchant who invites public to his premises is not insurer of safety of customers and is not liable for injuries caused by defects in premises, in absence of any evidence tending to show that he knew, or should have known, of existence of defects. (Per Blease, Stabler and Carter, JJ.)

5. Negligence—Negligence is for Jury if There is Any Evidence.—Where there is any evidence of facts constituting negligence, decision as to issue of negligence is properly matter for jury. (Per Blease, Stabler and Carter, JJ.)

Before Dennis, J., Sumter, Spring term, 1926.    Affirmed.

Action by Mrs. Annie H. Bradford against the F. W. Woolworth Company and others.    Judgment for plaintiff, and defendants appeal.

*Messrs. Harby, Nash & Hodges,* for appellants, cite: *Storekeeper not an insurer of his customers; becomes legally liable only if negligent:* 115 Pac., 837; 110 App. Div., 735; 72 Atl., 388; 107 Atl., 38; 79 Atl., 324; 34 L. R. A. (N. S.), 1077; 259 Fed., 206; 100 N. E., 546; 44 L. R. A. (N. S.), 89; 258 Fed., 917; 260 S. W., 982; 116 N. E., 409. *"Negligence":* 33 A. L. R., 866; 43 A. L. R., 866; 115 Pac., 837; 107 Atl., 38; 84 Atl., 909; Ann. Cas., 1914-A, 132.

*Messrs. Epps & Levy,* for respondent, cite: *Cases distinguished:* 115 Pac., 837; 107 Atl., 38; 79 Atl., 324; 259 Fed., 206; 260 S. W., 982; 84 Atl., 909.

October 15, 1927.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS. ·

This action was commenced in the Court of Common Pleas for Sumter County, S. C., on or about the 15th day of January, 1925, and was brought to trial before his Honor, Judge Dennis, and a jury at the spring term of Court, 1926. The trial resulted in a verdict in favor of the plaintiff in the sum of $10,000.00, following which a motion for a new trial was made, and refused by the presiding Judge. From judgment entered on this verdict the defendants, within due time, served notice of intention to appeal to the Supreme Court. During the progress of the trial, at the close of plaintiff's testimony, defendants made a motion for a nonsuit, and at the close of all of the testimony made a motion for a directed verdict, the grounds of said motions being correctly set out in the exceptions. The grounds of the motion for a new trial are also correctly set out in the exceptions.

The exceptions are:

"(1) That his Honor, the trial Judge, erred, it is respectfully submitted, in refusing defendants' motion for a nonsuit upon the ground that there is no testimony to prove the allegations of negligence alleged in the complaint, or that the condition of the store floor was due to any act of negligence on the part of either of the defendants, said error being that the said motion was meritorious and should have been granted, for the reason that the testimony failed to show any actionable negligence on the part of the defendants, or either of them.

"(2) That his Honor, the trial Judge, erred, it is respectfully submitted, in not granting the motion made by the defendants for a directed verdict in their favor, on the ground that there was no evidence of the acts of negligence alleged in the complaint, and that the acts shown by the testimony were not proved to have been negligent, and that

there was no evidence of any lack of due care, said error being that the said motion was meritorious and should have been granted, for the reason that the entire testimony showed that the defendants, in respect to the matters in question, had acted with due care and had not been negligent in any of the particulars alleged in the complaint, and his Honor should have so held.

"(3) That his Honor erred, it is respectfully submitted, in refusing the motion for a new trial made upon the ground that his Honor erred in refusing the motion for a nonsuit and directed verdict, and that the verdict was contrary to the greater weight of the evidence, for the reason that said motion was meritorious and should have been granted."

So the question involved upon this appeal is whether or not any actionable negligence alleged in the complaint was supported by sufficient testimony to carry the case to the jury.

This Court cannot reverse the trial Judge in refusing a new trial on the ground that the verdict was contrary to the greater weight of the evidence; that is with the trial Judge. If there was any competent evidence to support the verdict, then this Court will not reverse the judgment.

We think the evidence of appellants' witnesses, Martin, Burns, and Lee, was sufficient to carry the case to the jury as to whether, where floors are habitually oiled, there is liable to be an accumulation of oil or grease, which may be dangerous.

The respondent testified as to the actual condition of the floor at the spot she fell. Dr. Lemmon's and Mrs. Flowers', also Mr. Flowers', evidence was sufficient to carry the case to the jury.

It was for the jury to say whether the appellant allowed a particular location, where the respondent fell on this floor, to become dangerous on account of an accumulation of oil or grease.

In the case of *Trimmier v. Railway*, 81 S. C., 203; 62 S. E., 209, the Court held:

"That it was the duty of the master to see to it that its appliances and instrumentalities were in proper condition, and that the plaintiff, by showing that they were not, made a *prima facie* case against the defendant."

In *Bunch v. American Cigar Company*, 126 S. C., 326; 119 S. E., 828, the Court says:

"If without her fault she stepped into the oil and a part of it adhered to her shoe, causing her to slip and fall, in descending the stairs, it is the same in principle as if the oil had been spilt upon the steps, and brings the case within the doctrine so often declared by this Court, that if an injury is shown to have resulted from an unsafe place to work, a *prima facie* case of negligence is made out against the master, and the burden of exculpating himself is cast upon him."

In *Branch v. Railway Company*, 35 S. C., 407; 14 S. E., 808, the Court says:

"The allegation on the part of a servant, that he has sustained an injury while in the service of the master by reason of the neglect of a duty which the latter owes to the former, unquestionably states a cause of action, for, as said above, the omission of such duty affords at least *prima facie* evidence of negligence, and while it is true that such *prima facie* showing may be rebutted by evidence tending to show that such omisison of duty on the part of the master was not owing to his want of care and diligence, but was due to other causes which he could not control, yet until such *prima facie* showing is rebutted, it will be conclusive. For instance, the master may show that he did not know, and could not by the use of due care and diligence have ascertained, that there was any such defect in the machinery or other appliances furnished the servant as would be likely to cause the injury complained of; but until this is shown,

the failure to perform an acknowledged duty stands unexcused and renders the master responsible."

In *Granger v. Railway Company,* 101 S. C., at page 83; 85 S. E., 231, the Court says:

"The allegation on the part of a servant that he has sustained an injury while in the service of the master, by reason of the neglect of a duty which the latter owes to the former, unquestionably states a cause of action, for, as said above, the omission of such duty affords at least *prima facie* evidence of negligence, and while it is true that such *prima facie* showing may be rebutted by evidence tending to show that such omission of duty on the part of the master was not owing to his want of care and diligence, but was due to other causes which he could not control, yet until such *prima facie* showing is rebutted, it will be conclusive.

"For instance, the master may show that he did not know, and could not, by the use of due care and diligence, have ascertained, that there was any such defect in the machinery or other appliances furnished the servant, as would be likely to cause the injury complained of; but until this is shown, the failure to perform an acknowledged duty stands unexcused and renders the master responsible.

"It seems to us, therefore, that want of knowledge on the part of the master of the defect in the machinery, being a matter of excuse for the failure on his part to perform an acknowledged duty, constitutes matter of defense, and is not an element in the cause of action. *Branch v. Railway,* 35 S. C., 405; 14 S. E., 808."

In the case of *Gowns v. Watts Mill,* 135 S. C., 163, 167; 133 S. E., 550, 551, the Court quotes with approval:

"The master is nevertheless required to exercise such reasonable care in respect of the installation, maintenance, and operation of such machinery as is commensurate with the dangers involved, and he will be liable for injuries resulting from his failure to exercise such care." 39 C. J., 341.

The case of *Lasure v. Graniteville Manufacturing Company,* 18 S. C., 279, states that plaintiff was engaged in removing cotton bales from a warehouse by rolling them on a truck over an elevated tramway and while so doing the tramway gave way by reason of the splitting or breaking of some of the timbers supporting the track, and plaintiff fell, etc. The negligence in that case consisted of master's failure to provide safe and suitable appliances to enable his operatives to do their work, and to see that same are kept in proper repair.

The law imputes to the master knowledge of latent danger in his instrumentalities and casts on him the burden of proving that he could not have discovered the danger by the exercise of due diligence. *Trimmier v. Railway,* 81 S. C., 203; 62 S. E., 209.

I have quoted from cases of master and servant. The appellant was owner and in charge of the store; the respondent was invited to go there and trade. She did so and was injured. For the purposes of this case the same doctrine as in cases of master and servant should prevail.

All exceptions are overruled and judgment affirmed.

MR. JUSTICE BLEASE (concurring in result): I agree with the Chief Justice that there should be an affirmance of the judgment in this cause. I am not prepared at this time, however, to agree with him in the view that the rule requiring the master to furnish a reasonably safe place for his servant is precisely applicable in this case, where the relationship was that of owner of a public store and his *invitee.*

It occurs to me that the proper rule to be applied in this case is that laid down in *Thompson Co. v. Phillips,* 22 Colo. App., 428; 125 P., 563, cited by Mr. Justice Cothran, that:

"A merchant who invites the public to his premises is not an insurer of the safety of his patrons, and is, therefore,

not liable for injuries caused by some defects in the premises, *in the absence of any evidence* tending to show that he or his agents knew or should have known, by the exercise of reasonable diligence, of the defect." (Italics added.)

While the precise point seems not to have been decided in our State, I think that the holding mentioned is somewhat sustained by our cases of *Freer v. Cameron,* 4 Rich. (38 S. C. L.), 228; 55 Am. Dec., 663; and *League v. Stradley,* 68 S. C., 515; 47 S. E., 975.

The excerpt taken by Mr. Justice Cothran from 20 Ruling Case Law, 56, should be read in connection with the other matter from the same authority and in the same section, especially some expressions which I italicize. The full statement, of which his excerpt is a part, is as follows:

*"The authorities are entirely agreed upon the proposition that an owner or occupant of lands or buildings who directly or by implication invites or induces others to go thereon or therein owes to such persons a duty to have his premises in a reasonably safe condition and to give warning of latent or concealed perils.* In the language of a recent opinion: 'The law is well settled that an owner or occupant of land who by invitation, express or implied, induces or leads others to go upon premises for any lawful purpose is liable for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them.' If there are hidden dangers upon the premises he must use ordinary care to give warning thereof. While the rule has been applied in innumerable situations, it has been invoked most frequently, perhaps, in the case of injuries from unguarded excavations, unprotected stairways, hatchways, trapdoors, turnstiles, revolving or swinging doors, and collapsing buildings. *The facts of the particular case are, of course, controlling upon the question of negligence, and the decision thereon is properly within the sphere of the jury."* 20 R. C. L., 55, 56.

An examination of the numerous authorities cited by Mr. Justice Cothran will show, in my humble opinion, that they only sustain the doctrine announced in the few authorities to which I have referred.

*If there was any evidence* in the case at bar to show that the floor of the defendant company was made dangerous by the negligent excessive use of oil thereon, and if the defendants had knowledge thereof, or by the exercise of reasonable diligence could have known this fact, and the plaintiff was not aware of the condition of the floor, and her injuries resulted from the condition named, then the plaintiff was entitled to have her case submitted to the jury. As laid down in Ruling Case Law, *supra,* the facts of each case must control upon the question of negligence, and the decision as to such facts is properly a matter for the jury.

I do not think it is necessary to undertake to review all the evidence. Several witnesses gave testimony as to the excessive amount of oil on the floor, and the plaintiff testified that this oil caused her to fall. The employee of the defendant whose duty it was to oil the floor did not testify. The testimony from the manager of the defendant company showed that his examinations of the floor from time to time were very casual, and that he depended almost altogether on the oiler doing the work properly; and, yet, this oiler, a Negro laborer, had had very little experience in that line of work. It is well known to all our people, and no doubt the jury took it into consideration, that an ordinary Negro sweeper and oiler, if he is not watched, will sweep all the dust and trash he can into the corners. It was the duty of the defendants to see that this oiler did his work properly. The very fact that a large accumulation of oil, enough to have remained there for thirteen days, was on the floor was some evidence in itself that the defendants were negligent in not discovering the oil testified to by the plaintiff and her witnesses. In my opinion

every fact mentioned by Mr. Justice Cothran favorable
to the defendants was, in all likelihood, argued to the jury
and was properly considered by them.

The question before this Court is not the question if the
jury returned the wrong verdict. The question for us to
decide is only the one as to whether or not *there was any
evidence* to require the presiding Judge to submit the case
to the jury. Without doubt, the Chief Justice is right in
holding that there was no error on the part of the Circuit
Judge in that regard.

MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : I do not agree with
the conclusions announced in the opinion of the Chief Jus-
tice in this case, and propose, respectfully, to state the
grounds of my dissent.

The action is for $25,000.00 damages on account of per-
sonal injuries sustained by the plaintiff, resulting from a
fall in the store of the defendant company, due as alleged
to her slipping upon the oiled floor of the store which she
had entered as a customer.

Upon the trial before his Honor, Judge Dennis, and a
jury, at the close of the plaintiff's testimony the defendants
moved for a nonsuit, which was refused; at the close of all
of the testimony the defendants moved for a directed ver-
dict, which was also refused. The result of the trial was
a verdict of $10,000.00 in favor of the plaintiff. The de-
fendants then moved for a new trial, which was also re-
fused. The three motions were made upon the same
ground, substantially that there was no evidence tending to
establish negligence on the part of the defendants. The
exceptions raise the same question, which is the only ques-
tion in the appeal.

In the opinion of the Chief Justice it is stated:

"We think the evidence of *appellants'* witnesses, Martin,
Burns, and Lee, was sufficient to carry the case to the jury,

as to whether, where floors are habitually oiled, there is liable to be an accumulation of oil or grease which may be dangerous. The respondent testified as to the actual condition of the floor at the spot she fell. Dr. Lemmon's and Mrs. Flowers', also Mr. Flowers', evidence was sufficient to carry the case to the jury. It was for the jury to say whether the appellant allowed a particular location, where the respondent fell, on the floor, to become dangerous *on account of an accumulation of oil or grease."*

In other words, that there was sufficient evidence tending to establish the fact that by reason of an accumulation of oil, the place occupied by the plaintiff was made unsafe, and that this was the proximate cause of her fall.

I do not agree with this conclusion, which will be discussed at a later point in this opinion; for the moment let it pass.

Upon this hypothesis the learned Chief Justice proceeds to apply to the relation of *owner and invitee,* the rule applicable to the relation of *master and servant;* this, to my mind, is the controlling vice in the opinion.

There is no doubt of the correctness of the principle, that as *between a servant and his master,* the master owes to the servant the duty of exercising ordinary care to provide a reasonably safe place in which the servant is to perform the service required of him; and that in an action by the servant against the master, for an injury resulting from an alleged breach of this duty, if the injury is shown to have resulted from an unsafe place to work, a *prima facie* case of negligence is made out against the master, and the burden of exculpating himself is cast upon the master. *Bunch v. American Cigar Co.,* 126 S. C., 324; 119 S. E., 828, and the numerous cases cited therein.

But I do not at all agree that this rule is applicable to the relation of *owner of the premises and an invitee* (the

relation between the plaintiff and the defendant corporation in this case).

The relations of carrier and passenger and master and servant are essentially different from that of owner and invitee. They are both contractual, while the other gives rise to a noncontractual duty. It is not illogical, therefore, that in the first two relations, a presumption of negligence may arise; in the last, there is no presumption of negligence; it must be proved. *"Excepting where contractual relation exists* between the parties, as in the case of carriers of passengers and some others, negligence will not be presumed from the mere happening of the accident and a consequent injury, but the plaintiff must show either actual negligence, or conditions which are so obviously dangerous as to admit of no inference other than that of negligence." *Stearns v. Ontario Co.,* 184 Pa., 519; 39 A., 292; 39 L. R. A. 842; 63 Am. St. Rep., 807. "The mere fact that the plaintiff was injured while lawfully on the premises of the defendant does not raise a presumption of negligence on the part of the latter." *Spickernagle v. Woolworth,* 236 Pa., 496; 84 A., 909; Ann. Cas., 1914-A, 132.

In *Diver v. Singer Co.,* 205 Pa., 170; 54 A., 718, which was a case of the plaintiff slipping upon an oiled floor, the Court said:

"To entitle the plaintiff to recover, it was necessary that she should show some specific act of negligence on the part of the defendant, or the existence of conditions so obviously dangerous as to amount to evidence from which an inference of negligence would arise."

In *De Velin v. Swanson* (R. I.), 72 A., 388, which was a case of a customer slipping upon a banana peel, the syllabus is:

"A storekeeper is not liable for injuries to plaintiff by slipping on a banana peel in the store, in the absence of evidence that defendant had notice that the peel was on

the floor, or that it had been there so long as to constitute implied notice."

In *Garland v. Furst Store,* 93 N. J. Law, 127; 107 A., 38; 5 A. L. R., 275, the plaintiff, a customer, fell upon a tiled floor in the defendant's store. It was held that notice of the unsafe condition of the floor must have been brought home to the defendant. The syllabus is as follows:

"Where liability is made to depend at all upon notice to a party, the adversary party must establish [it] before the other is called upon to contest it.

"A mere fall of a person on the premises of another, without any evidence to show how the fall was occasioned, raises no presumption of negligence on the part of the owner. * * *"

In *Schmatterer v. Bamberger,* 81 N. J. Law., 558; 79 A., 324; 34 L. R. A. (N. S.), 1077, Ann. Cas. 1912-D, 139, the plaintiff, a customer, in going down steps leading to the basement of defendant's store, caught the heel of her shoe in a brass "nosing," originally attached to the edge of the wooden step to prevent its wear, which was loose, causing her to trip and fall, and it was held that the evidence failed to show that the storekeeper had not used reasonable care in keeping the stairway safe for use, for the reason that it had not been brought to the notice of the storekeeper, or had existed for such a length of time as to charge him with notice of its existence, and that in the absence of proof of one of those conditions, a *prima facie* case of negligence was not established.

In *Huey v. Gahlenbeck,* 121 Pa., 238; 15 A., 520; 6 Am. St. Rep., 790, the syllabus is:

"Owner of premises is not liable in damages for injury sustained by another while lawfully thereon, in the absence of any evidence as to the direct cause of the injury, or that it was the result of the owner's negligence."

"The Supreme Court of Indiana, after a careful review of the authorities, deduces the rule that in order that liability

may attach for injury occasioned by something not inherently dangerous and defective, which is found upon the grounds of or in use by one who is under a qualified obligation to the injured person, it must be shown that the defendant either knew, or that by the exercise of such reasonable skill, vigilance, and sagacity as are ordinarily possessed and employed by persons experienced in the particular business to which the thing pertains, he should have known of its dangers and defective condition, and that the actual and probable consequence of its use would be to produce injury to some one." Note, 6 Am. St. Rep., 795.

In *Thompson Co. v. Phillips,* 22 Colo. App., 428; 125 P., 563, it is held that a merchant who invites the public to his premises is not an insurer of the safety of his patrons, and is therefore not liable for injuries caused by some defect in the premises, in the absence of any evidence tending to show that he or his agents knew or should have known, by the exercise of reasonable diligence, of the defect.

In *Rosen-Steinsitz v. Wanamaker* (Sup.) 154 N. Y. S., 262, it was held that, in the absence of proof of negligence on the defendant's part, no recovery can be had for injuries sustained by a customer by reason of a fall occasioned by slipping on an unfastened rubber mat on the marble floor of the defendant's store.

In *Kipp v. Woolworth,* 150 App. Div., 283; 134 N. Y. S., 646, recovery was denied for injuries to a customer who slipped on an oiled spot in the floor, where there was no evidence of negligence on the part of the store owner in permitting the spot to exist.

In *Dudley v. Abraham,* 122 App. Div., 480; 107 N. Y. S., 97, it was held that the proprietor of a store was not liable to one who slipped on a wet or slimy spot on a floor near a drinking fountain, in the absence of any evidence that the defendant put it there or that it had been there long enough for him to have seen it and cleaned it up.

In *Graham v. Woolworth* (Tex. Civ. App.), 277 S. W., 223, the plaintiff, a customer, slipped and fell on a wet spot in a passageway leading from the store to the sidewalk. It was held that there could be no recovery in the absence of evidence that the defendant had notice of the liquid on the floor, or that it had been there long enough to charge the defendant with notice of its presence in time to remove it.

In *Markman v. Bell,* 285 Pa., 378; 132 A., 178; 43 A. L. R., 862, it was held that the mere presence upon the walk at the entrance of a store, of vegetable leaves and meat scraps, when a customer is injured by falling there, does not of itself show negligence which will render a storekeeper liable for the injury. "A storekeeper is not liable to a customer, injured by tripping on a worn carpet, unless he knew, or should have known, of the defective condition in time to have repaired it, or warned the customer, or the general condition was such that he should have anticipated that it would become dangerous, unless repaired or replaced." *Kaufman v. Cranston* (C. C. A.), 258 F., 917.

In *Emerson v. Kresge* (C. C. A.), 259 F., 206, a candy counter was placed near the head of a stairway in a store; a bin thereon was filled so high that pieces spilled on the stairway, upon one of which the plaintiff, a customer, slipped and was injured. Held insufficient to establish the defendant's negligence, in the absence of evidence that the employees habitually spilled candy, or that they knew of it in the present instance.

In *Kelley v. Quimby,* 227 Mass., 93; 116 N. E., 409, the syllabus is:

"Evidence that plaintiff [a customer] was injured by glass falling upon her foot from a showcase, and that its fall was due to the defective condition of a bracket, does not sustain a recovery where there was no evidence that defendant knew the bracket's condition, or how long its defective condition had existed."

Supporting the proposition that no presumption of negligence on the part of the proprietor of a store arises from the mere fact that a customer was injured while lawfully upon the premises are the following cases: *Norton v. Hudner,* 213 Mass., 257; 100 N. E., 546; 44 L. R. A. (N. S.), 79; *Hathaway v. Chandler,* 229 Mass., 92; 118 N. E., 273; *Broadston v. Beddeo,* 104 Neb., 604; 178 N. W., 190; *Garland v. Furst,* 93 N. J. Law, 127; 107 A., 38; 5 A. L. R., 275; *Belsky v. Store* (Sup.), 121 N. Y. S., 321; *Kipp v. Woolworth,* 150 App. Div., 283; 134 N. Y. S., 646; *Sennert v. Weisbecker,* 82 Misc. Rep., 449; 143 N. Y. S., 1039; *Schaefer v. De Neergaard,* 196 App. Div., 654; 188 N. Y. S., 159.

In *Bennett v. Railroad Co.,* 102 U. S., 577; 26 L. Ed., 235, the Court, by Mr. Justice Harlan, declares the rule thus:

"\*  \*  \* The owner or occupant of land who, by invitation, express or implied, induces or leads other to come upon his premises, for any lawful purpose, is liable in damages to such persons—they using due care—for injuries occasioned by the unsafe condition of the land or its approaches, *if such condition was known to him and not to them,* and was negligently suffered to exist, without timely notice to the public, or to those who were likely to act upon such invitation."

In 20 R. C. L., 56, it is said:

"The law is well settled that an owner or occupant of land who by invitation, express or implied, induces or leads others to go upon premises for any lawful purpose, is liable for injuries occasioned by the unsafe condition of the land or its approaches, *if such condition was known to him and not to them.*"

"Evidence merely that plaintiff was hurt by slipping on ice on defendant's premises does not show negligence" on the part of the "defendant, it not appearing how long the ice had been there." *Bassin v. Butler* (Supt.), 94 N. Y. S., 14.

"The owner or occupant of premises who induces others

to come upon it by invitation express or implied, owes to them the duty of using reasonable or ordinary care to keep the premises in a safe and suitable condition, so that they will not be unnecessarily or unreasonably exposed to danger. And hence such persons may recover for injuries received, owing to dangerous condition of the premises *known to him and not to them.*"    29 Cyc., 453.

In the case of *Rom v. Huber,* 93 N. J. Law, 360; 108 A., 361, the plaintiff, a patron, slipped upon soap that had been left upon the floor of a bathroom.    The Court held:

"It must appear that the condition which produced the fall had either been in fact brought to the previous notice of the defendant, or, failing in proof of such actual notice, the condition had existed for such a space of time as would have afforded the defendant sufficient opportunity to make proper inspection as to the safety of the place."    Affirmed by the Court of Errors, 94 N. J. Law, 258; 109 A., 504.

"The owner or occupant of land is liable to those coming to it using due care, at his invitation or inducement, express or implied, for an injury occasioned by the unsafe condition of the land, or of the access to it, *which is known to the owner, and not to those coming upon the premises.*"    *Alfrey Heading Co. v. Nichols,* 139 Ark., 462; 215 S. W., 712.

In the case of *Thompson Grocery Co. v. Phillips,* 22 Colo. App., 428; 125 P., 563, the plaintiff slipped upon a piece of grease or tallow which was upon the floor of a butcher shop, into which she had gone as a customer.    The Court said:

"But assuming that the grease was on the floor and was the cause of plaintiff's fall, before plaintiff can recover there must be some evidence, at least, tending to show that defendant or its agents knew, or by the exercise of reasonable diligence could have known, this fact, before it may be held guilty of negligence."

In *O'Leary v. Smith,* 255 Mass., 121; 150 N. E., 878, the plaintiff slipped on something that had been spilled on the floor of the vestibule to a restaurant which she was entering

as a customer.    The Court directed a verdict for the defendant upon the ground:

"* * *    There was no evidence that the substance had been on the floor a sufficient length of time for the defendant to have discovered it in the performance of his duty to see that the place was reasonably safe for his customers."

I think that from these authorities and a host of others to the same effect that could be cited, in a case of this kind, it was incumbent upon the plaintiff to establish a positive act of omission or commission upon the part of the defendant. This could only be shown by evidence tending to show, in the first place, that there was such an accumulation of oil upon the floor as to render it unsafe for the plaintiff; that the defendant was cognizant of the unsafe condition of the floor; that it took no steps to relieve the danger of the situation.    Of all of these elements I think that the evidence is totally lacking, as will appear by an examination of the record before us.

Repeating for close inspection the statement in the opinion of the Chief Justice:

"We think the evidence of *appellants'* witnesses Martin, Burns, and Lee, was sufficient to carry the case to the jury as to whether, where floors are habitually oiled, there is liable to be an accumulation of oil or grease, which may be dangerous."

The question asked of Martin was this:

"Suppose this oil is put on the floor, *is not wiped up,* the liquid part evaporates and leaves a residue on the floor, put there again in two weeks and evaporates and leaves a residue, won't that leave a greasy place?"

His answer was:

"I imagine it would, if you put oil on the floor; you asked me if it would be greasy.

"Q. Be sleek?    A. Yes, sir.

"Q. And if a person were to step in that it would be liable to throw them?    A. Yes, sir."

Martin was a witness for the defendant; put up after the process of oiling had been explained by others, showing that after the oil was poured upon the floor it was spread with a mop. An entirely different situation from that hypothetically stated in the question, of which there was not a particle of evidence.

And so with the witness Burns:

"Q. Suppose there was a corner in the store where the oil ran *and you didn't mop it up,* and dust gets in it, and other applications of oil are put on, *and not wiped up;* that would get pretty sleek after a while? A. It would be *if it were not swept up.*"

The witness testifying to a hypothetical condition of which there was no evidence.

The witness Lee testified to conditions in his own store; that after several applications he had noticed "little sleek places" that were greasy; that he did not use the feldspar to absorb it.

It appears to me that the testimony of these witnesses is of no value in suggesting even that under the circumstances of this case there was an accumulation of oil at the place.

Again it is stated:

"The respondent testified as to the actual condition of the floor at the spot she fell."

If this is intended to convey the idea that she testified to an accumulation of oil at the spot where she fell, I do not think that such an inference can be legitimately drawn from her testimony:

"I saw a distinct mark of my heel as though it had passed through some substance. * * * The appearance of the floor was sleek, and I noticed there was a murky substance *as though oil had been placed on the floor:* * * * It looked like oil on the floor. It (the mark made by her heel) seemed about * * * 18 * * * or 24 inches * * * about the width of my finger * * * a most distinct mark.

* * *  The color of the floor at that case  *  *  *  had a darker appearance."

At no place did she testify that there was an accumulation of oil, as alleged in the complaint and the manifest basis of her action, nor does she testify that any of the "accumulated oil" adhered to the heel of her shoe.

Again it is stated:

"Dr. Lemmon's and Mrs. Flowers', and also Mr. Flowers', evidence was sufficient to carry the case to the jury."

Let us see. I find in the testimony of Dr. Lemmon the following; it is all that bears upon the important issue of an accumulation of oil:

"Q. Did you see any mark on the floor? A. Yes, sir. I was told she slipped and *I went and looked* and I noticed (not the accumulation but) *the mark on the floor.* * * * *I didn't see any surplus of oil;* I noticed it was an oiled floor; *I didn't see any pool of oil* * * * *I didn't notice any more (oil) there than anywhere else.* * * *

"Q. Did you slip on the floor? A. No, sir.

"Q. You have an oiled floor at your house? A. Yes, sir. * * *

"Q. The one down there (at the store) is not as slippery as the one at your house, is it? A. *I wouldn't think so.*"

His testimony does not contain a suggestion that there was an accumulation of oil or other greasy substance at the spot; in fact, it shows that there was not, as he was particular to go to the spot and saw only the mark of the plaintiff's shoe heel.

The witness Mrs. Flowers testified:

"I looked on the floor and there was a mark about a half inch wide and about 18 inches long, and the floor was oiled around the corner. * * *

"Q. What did you notice about the color of the floor around the showcase? A. It was a lots darker than any

other place on the floor; lots more oil there than any other place on the floor.  *  *  *

"Q. You didn't notice any pool?   A. No, sir; but it was thicker.  *  *  *  I am most positive it was oil."

She gives no intimation of such an accumulation of oil or greasy substance as to attract attention as a matter of danger.

The witness A. R. Flowers testified:

"I went into the Woolworth store to look at the floor and I saw that it was oiled.  *  *  *  It was darker right near the showcase  *  *  *  at the showcase there was more oil than in the middle (where customers walked).  *  *  *  It was outside the ordinary track where people walk.  *  *  *  I rubbed my foot on it.  *  *  *  It would not slip standing flatfooted, but as soon as you turned your foot the least bit it would slip."

This testimony, and it is all that is relied upon, is utterly insufficient as even tending to show that there was such an accumulation of oil (alleged in the complaint), and was calculated to render the place unsafe.   But assuming that it was sufficient for that purpose, the plaintiff has only carried half the burden imposed upon her, of not only establishing the unsafety of the place, *but that the condition was or should have been known to the defendant;* of this there is not a particle of evidence.   Thus the error of applying the presumption obtaining in cases involving the relation of master and servant to a case involving the relation of owner of the premises and an invitee, I think is demonstrated.

It may be contended that upon the alleged but totally unsustained theory of an accumulation of oil at the place, even if the defendant had no knowledge of the dangerous condition, reasonable diligence on its part would have discovered it.

Assuming that there was evidence tending to show such accumulation, the evidence for the plaintiff showed that it was up next to the base of the counter, away from the track

ordinarily followed by customers in the store, not at a place where the defendant could reasonably have apprehended danger to its customers.

In view of the absence of any evidence tending to show negligence on the part of the defendant, the defendant was entitled to a directed verdict. This conclusion is strengthened, if it needed strengthening, by the complete showing on behalf of the defendant.

The oil used on the floor was ordinary floor oil purchased from the Standard Oil Company, which is a standard preparation in constant and widespread use. It was applied to the floor with a sprinkling pot and was sprinkled up and down the aisle after which it was rubbed down with a brush made of absorbent fibre, which distributed the oil over the floor. This was done on Saturday night of every other week. Immediately on Monday morning following the oiling, a heavy coat of powdered feldspar was put on the floor. This was done to absorb any oil that might be left on the surface of the floor, and also to take the sleekness out of the floor. The feldspar is left on the floor until about noon on Monday, with people walking over it, and is then swept up. The plaintiff was hurt on a Friday morning, and the oiling day was the Saturday immediately following. The floor was last oiled previous to her accident on the *thirteenth day prior thereto*.

This oiling system had been in use in the Sumter store since it had been opened. Approximately 2,000 people each week came in the store, walking over the very place where the plaintiff fell, and, so far as the manager of the store and any of his employees knew, no one had slipped on the floor and no complaint or report of any one slipping or falling on the floor had been made.

The floor was swept at night immediately after which it was inspected, and was again inspected in the morning immediately before the store was opened at about 8 o'clock. There is no evidence that the manager of the store or any

other person caused any oil to be put on the floor on the
morning of the accident, or at any time subsequent to the
regular oiling day 13 days prior thereto, nor is there any
evidence that the manager of the store or any of its em-
ployees had any knowledge or notice that any had been
placed there.

The purpose in oiling floors is to keep down dust. The
system of oiling floors above described is used in all of the
stores of the F. W. Woolworth Company, used in the Mc-
Lellan stores, used in the A. & P. stores and the Kress stores,
with the exception that some of these stores did not apply
the feldspar, which was regarded by the Woolworth people
as an additional safeguard. It also appeared that the same
kind of floor oil was used periodically, at various intervals,
by W. B. Burns & Sons conducting a hardware store, W. A.
McElveen conducting a drug store, Mrs. J. W. Brunson con-
ducting a restaurant, all in Sumter. It appears from the
testimony of Mr. Wilkinson, one of the traveling superin-
tendents of the defendant company, that this method of
oiling floors had been used by the Woolworth Company for
more than 16 years, and is commonly regarded as the best
and safest method.

It appears from the undisputed testimony that when this
floor oil is first placed on the floor, the floor is wet, greasy,
and sleek. It is therefore put down on Saturday night so
that it can soak in over Sunday. On Monday morning it is
found to be all, or practically all, absorbed in the wood of
the floor. The feldspar, which is described by Mr. Wilkin-
son as being pulverized very fine, is then spread on the floor.
It absorbs any surplus oil or any moisture, and is some-
what like pumice. It becomes ground into the surface of
the floor and prevents one from slipping.

The plaintiff made no effort whatever to controvert the
showing of the defendants that the floor oil and feldspar
used were standard preparations, or to show that they were
used in an improper way or at an improper interval, or to

show that, generally speaking, they caused a store floor to become slippery or insecure.

I think, too, that the remarks of the presiding Judge upon the motion for a new trial are very persuasive of the correct position of the defendant upon the motion for a directed verdict. He said:

"I am in very grave doubts about whether I should have granted a directed verdict. Now if I don't grant a new trial, and the Supreme Court says I am wrong in not directing a verdict, that will be the end of it. If I should grant a new trial, Mr. Harby, all the influences that were against you in this trial will be against you in the next trial. The jury will give a verdict to a woman where they wouldn't give it to a man, and the amount, you admit, under the circumstances, is not large. * * * I can't go so far as to say that the verdict was contrary to the greater weight of the evidence, and if I set that verdict aside, it would be because the overwhelming weight of the testimony was on the other side. I am nowhere as near convinced of that as I am that I should have directed a verdict. The more I think of the case, the more that feature of it worries me. If I should have and did not, you have your remedy, but I can't go so far as to say that the overwhelming weight of the evidence was against the verdict. I am going to decline a new trial."