14969

ANDERSON v. BELK-ROBINSON CO.

(5 S. E. (2d), 732)

March, 1938.

*Messrs. Mitchell & Horlbeck,* for appellant,

*Messrs. J. C. Long* and *Brantly Seymour,* for respondent,

November 28, 1939.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The plaintiff brought this action against the defendant for the recovery of damages for personal injury. The trial resulted in a verdict in her favor, and the defendant appeals from an order overruling its motions for a nonsuit and for a directed verdict.

The plaintiff alleged that on Monday afternoon, May 23, 1938, she, accompanied by her daughter, visited the defendant's store in the City of Charleston for the purpose of making a purchase of merchandise. Upon entering the store she walked down the north aisle, examining draperies which were displayed upon tables or counters, and as she proceeded down the aisle her right foot slipped and she fell to the floor, sustaining a severe injury to her right elbow. She testified that after she was assisted from the floor she noticed a greasy, slippery area on its surface, about three inches wide and about two feet long, and located about three inches from the counter. She did not observe the condition of the floor before she slipped, and it was only after getting up that she noticed that the surface of the floor was covered with a black, oily composition, which is generally sprinkled on floors to allay the dust while sweeping.

The compound used in the store of the defendant is called dust-down, and had been in use for many years. It is made up of sand, sawdust, and a non-lubricating oil, said to be kerosene. The injury to the plaintiff occurred on Monday afternoon, and the floor had been sprinkled with this preparation the preceding Monday night, and swept off, and the floor had been swept every morning thereafter during the week. So that the dust-down had been applied to the floor at least one week before the alleged accident. As stated, this practice of applying the compound to the floor weekly had been going on for years.

The daughter of the plaintiff testified that she was in the store aisle about two steps in front of her mother, and that when she and others had assisted her mother to arise she noticed the black, greasy spot on the floor where her mother had fallen; that a few days after the accident she was again in the store of the defendant, and observed that the discolored spot had been mopped up. Another witness for the plaintiff testified that he had a place of business a few doors from defendant's store; that the plaintiff was his house-

keeper, and that immediately after the accident occurred she entered his store and reported it to him, and described to him the exact location in the aisle where she had slipped upon the black, greasy surface. This witness examined the black spot carefully within thirty minutes after the accident. He testified in part as follows:

"Q. You say this was a black spot you saw on the floor that afternoon? A. A dark spot.

"Q. Exactly what did you do to determine what it was? A. I run my foot over it and it was slippery, and I reached down with my hand.

"Q. Did you see any of that powdered stuff still on it? A. Like a grit with constant walking over it.

"Q. You say it was black? A. At that time it was black.

"Q. How high above the surface of the floor was it? A. I didn't measure it.

"Q. How much of it was there? A. Just a sprinkle.

"Q. A teaspoonful, do you think? A. I don't know.

"Q. Did you go there to make an examination? A. I went there to see what she slipped on, not how much.

"Q. You could judge how much it was? A. In that space, I would say it took about four or five tablespoonfuls.

"Q. You didn't see any anywhere else, did you? A. No, sir."

He further testified that there was no accumulation of oil on the floor, but that in rubbing his hand over the spot, oil adhered to his hand, with a little grit, which was pulverized from being constantly walked upon. He said that he used the same sweeping compound on the floor of his store, and that one or two people had slipped upon it.

There was evidence on behalf of the defendant that once a week, on Monday, after the store was closed, the cleaning compound was lightly sprinkled on the floor, and immediately swept off; that the compound consisted of sand, sawdust, and kerosene, the latter of which is used as a binder, and being a light, non-lubricating oil, quickly evaporates.

It was likewise testified that the floor was swept and properly inspected every day. At least two store employees testified that they did not notice any oil stain on the floor immediately after the accident. The manager of the defendant's store had this to say with reference to the method of inspection:

"Q. * * * Is there anyone in your store charged with the specific duty of making an examination of those floors each morning? A. All of us men who work in there are required to look over the floor; just like you walk in your office in the morning and look over the floor.

"Q. Just like I would walk in the office and look over the floor? A. I don't know how you look over your floor, but we are required to look over the aisles and see that there is no trash or anything like that on the floor."

The appellant contends that a nonsuit or directed verdict should have been granted, because there is no evidence tending to show that the defendant knew or should have known by the exercise of reasonable care of the alleged dangerous condition of the floor.

This constitutes the sole ground of appeal.

The question presented is: What duty does the proprietor or owner of a store or shop owe to a customer or invitee, respecting the condition of the floors in his establishment?

In *Bradford v. F. W. Woolworth Co.,* 141 S. C., 453, 140 S. E., 105, we laid down the rule, deduced from the weight of authority, that a merchant who invites the public to his premises is not an insurer of the safety of his patrons, and is therefore not liable for injuries caused by some defect in the premises, in the absence of any evidence tending to show that he or his agents knew or should have known, by the exercise of reasonable diligence, of the defect. This principle was reaffirmed in *Pope v. Carolina Theater,* 172 S. C., 161, 173 S. E., 305; *Perry v. Carolina Theater,* 180 S. C., 130, 185 S. E., 184.

The Courts are not in harmony respecting the liability of a store owner or proprietor for injury received by customers and other invitees as the result of dangerous floor conditions, brought about by the presence of oil or grease thereon. Numerous cases upon the subject are collected in the notes to 33 A. L. R., 181, 58 A. L. R., 136, and 100 A. L. R., 710. Many are also cited in the dissenting opinion of Mr. Justice Cothran in the *Bradford case, supra*. It was said in the prevailing opinion in the *Bradford case* [141 S. C., 453, 140 S. E., 107] that "The very fact that a large accumulation of oil, enough to have remained there for 13 days, was on the floor was some evidence in itself that the defendants were negligent in not discovering the oil testified to by the plaintiff and her witnesses".

One of the specifications of negligence charged against the defendant in the case at bar is that it failed and neglected to exercise reasonable care in maintaining the floor in such condition as to safeguard the public, and especially the plaintiff, from injury. It is likewise charged that the defendant, its agents and servants, made no proper inspection of the floor, and that it failed to remove the excess grease, oil, or other slippery substance therefrom, when it knew or should have known, in the exercise of reasonable care, that the defective condition was dangerous to customers and invitees.

In the instant case we think that the evidence is sufficient to support a verdict of negligence on the part of the defendant. The testimony, viewed in the light most favorable to the plaintiff, clearly made a jury issue, whether the defendant was negligent in maintaining the floor in a reasonably safe condition, and whether the defendant knew or should have known by the exercise of reasonable diligence that the floor was defective, and created a hazard to customers by reason of the slippery spot on the floor.

There is no suggestion in the testimony that any third person could have dropped or placed the greasy substance

on the floor. On the contrary a reasonable inference from the testimony may be drawn, that this sweeping compound was placed there by the defendant, and had remained there for an appreciable length of time, since the testimony shows that the grit in it had become pulverized by having been constantly walked upon. There was also testimony that this spot where the plaintiff fell was different in color from the remainder of the floor. From these facts, the jury could have drawn the inference that if the defendant had exercised reasonable diligence, the dangerous condition of the floor could have been detected by proper inspection.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.