17589

Tillman L. GILLILAND and St. Paul-Mercury Indemnity Company, Appellants, v. PIERCE MOTOR COMPANY, Respondent

(111 S. E. (2d) 521)

*Messrs. Carlisle, Brown & Carlisle,* of Spartanburg, *for Appellants,*

*Messrs. Butler & Chapman,* and *L. Paul Barnes,* of Spartanburg, *for Respondent,*

December 2, 1959.

Moss, Justice.

This action was instituted by Tillman L. Gilliland and St. Paul-Mercury Indemnity Company, a corporation, the appellants herein, against Pierce Motor Co., Inc., the respondent herein, seeking actual and punitive damages for alleged personal injury suffered by Tillman L. Gilliland, on December 26, 1956, through the alleged negligence and willfulness of the respondent. St. Paul-Mercury Indemnity Company, one of the appellants, was the Workmen's Compensation Insurer of Bell Laundry, the employer of Gilliland, and was joined as a party as statutory assignee of Gilliland's cause of action against the respondent by reason of the fact that it had paid a compensation award to Gilliland.

The respondent answered the complaint, admitting that Gilliland had fallen on its premises with some resulting injuries, and admitted the subrogated interest of the corporate appellant, but denied liability for the injury to Gilliland, and pleaded contributory negligence and willfulness on his part.

The case was tried before R. Hoke Robinson, Special Circuit Judge, and a jury, at the February, 1958, term of the Court of Common Pleas for Spartanburg County, South Carolina. The respondent, at the conclusion of the testimony in behalf of the appellants, moved for a nonsuit on the ground that the evidence failed to show that the respondent was guilty of any actionable negligence; and that Gilliland.

was guilty of contributory negligence. The respondent also moved for a nonsuit as to punitive damages. The motion was granted as to punitive damages, but otherwise overruled. At the end of all the testimony, the respondent moved for a directed verdict. This motion was refused and the case was submitted to the jury, resulting in a verdict for the appellants. The respondent then made a motion for judgment *non obstante veredicto* on the ground that there was no evidence of actionable negligence on the part of the respondent; and on the further ground that even if the respondent was guilty of negligence, Gilliland was guilty of contributory negligence. The trial Judge granted the motion for judgment *non obstante veredicto* upon the ground that the appellants failed to prove any actionable negligence on the part of the respondent. The appellants allege error in this ruling. The respondent duly served notice that it would move this Court to sustain the ruling of the trial Judge upon the ground that Gilliland was guilty of contributory negligence.

This appeal can be disposed of by determining whether or not there was sufficient evidence of negligence on the part of the respondent to require the submission of the case to the jury. So far as this appeal is concerned the complaint charged that the injury to Gilliland, an invitee, was proximately caused by the negligence of the respondent in failing to keep its business premises in a reasonably safe condition; in allowing a large quantity or puddle of oil, grease or slippery substance to accumulate on the floor of its premises where it well knew that those invited therein would be expected to walk; in failing and omitting to remove said oil, grease or slippery substance from said floor after it knew or should have known, by the exercise of reasonable care and diligence of its presence; in failing to properly inspect its floor; in allowing automobiles to be placed upon the floor so as to partially conceal the floor where the oil was; in failing to make due provision for the detection and removal of the oil from the floor; and in failing to properly light the premises. The respondent denied the allegations of the

complaint and alleged that Gilliland was guilty of contributory negligence.

It appears from the evidence that the respondent, Pierce Motor Co., Inc., is engaged in the business of selling Ford automobiles and trucks, and in connection with said business operates a garage for the repair and servicing of automobiles and trucks, including lubrication service for the cars of its customers. The evidence shows that motor vehicles were constantly being parked and moved on the floor of the respondent's repair shops, and that very frequently customers drove their automobiles into the service department and parked them for the purpose of having repairs done. It also appears that the automobiles so parked were frequently moved about from place to place in the service department; and through one cause or another, quantities of oil would leak from said parked automobiles in a very brief period of time.

The evidence shows that in the repair or service department of the respondent a locker room, which was a half floor above the level of the garage floor, was maintained for employees for the purpose of storing soiled and clean work clothes. Access to this locker room was through an entrance from the service garage and up a flight of stairs.

Tillman L. Gilliland, hereinafter referred to as the appellant, was a driver for Bell Laundry. He had been so employed for approximately fifteen years. One of the places where he called in connection with his employment was at the place of business of the respondent, where he picked up, and returned after laundering, coveralls and other articles of clothing of the employees. The appellant had been calling for this purpose at the respondent's place of business four times a week for almost five years. The work clothes or coveralls were laundered for the garage employees, which the employees furnished and caused to be laundered at their own expense.

It appears that on the morning of Wednesday, December 26, 1956, the appellant, along with his nephew and helper,

Larry Gilliland, about eleven years of age, entered the service department of the respondent from a doorway connecting the said department with an alley, and walked across the floor of the garage and up the stairs to the locker room for the purpose of gathering up the coveralls to be cleaned. In so doing, they passed between two parked cars and over the place where the appellant slipped and fell some five minutes later while returning from the locker room over the said course, or path, that he had taken in going to the locker room. It further appears that as the appellant and his helper passed between the two parked cars on their way to the locker room, that they did not see any oil or grease in said passageway, but on the return trip Larry Gilliland was in front and he partly slipped on some oil, and he attempted, but too late, to warn his uncle about the oil, the latter's heel slipping in the oil and causing him to fall and resulting in injury to his right knee.

Larry Gilliland, the helper to and nephew of the appellant, testified that the oil on which his uncle slipped looked like normal, natural oil and the spot was round in shape and about six to eight inches in size. He also testified that he had no difficulty in seeing the size of the oil and the color of it immediately after his uncle had fallen. The service manager of the respondent testified that he examined the spot of oil immediately following the fall of the appellant and found it to be three or four inches in diameter and fresh engine oil, such as naturally results from the normal condensation of oil in an automobile, which occurs upon a car being parked. The evidence is undisputed that the oil spot was such as to indicate that it was fresh and not covered over by dirt or dust, nor had the oil been walked upon.

It further appears that the place of business of the respondent was closed on Saturday afternoon, December 22, 1956, and at such time the floors of the place of business were cleaned. The place of business was closed from then until December 26, 1956, for the Christmas holidays. It further appears that when the service department was opened

on Wednesday morning, the day of the injury to appellant, that the service manager went over the area where Gilliland later fell and all of the mechanics and other employees went over this same area going to and from the locker room. It further appears that there was no oil in this area when these numerous persons passed over it. The trial Judge, in summarizing the evidence on this point, said:

"* * * The evidence shows further that a number of persons had traversed this area, including the Plaintiff-Gilliland himself and his nephew, some short while before the time of his fall. This certainly does not prove that the puddle of oil was there for any appreciable time and leaves the length of time the oil was there speculative and conjectural."

The evidence in this case does not show that the respondent had any actual knowledge that the oil was on the floor where the appellant fell. The appellants do not contend that the respondent had actual knowledge of the presence of the oil at the place where Gilliland fell. The trial Judge so concluded and we find no evidence upon which to hold that his conclusion was erroneous. Therefore, the appellants can recover only upon a showing that the oil had been on the floor long enough to charge the respondent with constructive notice of its presence. There is no testimony in the record as to how long the oil had been on the floor at the point where the appellant fell. There is an absence of any evidence to show that the oil had been on the floor of the garage of the respondent a sufficient length of time to charge the garage owner with constructive notice of its presence.

The burden in this case was upon the appellants to show that the oil was on the floor by an act of the appellants or that it had been there for such a time as to charge the appellants with notice thereof.

In the recent case of *Hunter v. Dixie Home Stores*, 232 S. C. 139, 101 S. E. (2d) 262, 264, a customer brought suit against the operator of a self-service store for injuries sustained in a fall when she stepped on some beans in an

aisle of the store. We held that the burden was upon the customer to show that the beans were on the floor by an act of the operator of the store or that they had been there for such length of time as to charge the operator of the store with constructive notice of the presence thereof. We held that the customer's evidence failed to make such a showing. In reversing the judgment in favor of the customer, we said:

"In the case of *Bagwell v. McLellan Stores Co.,* 216 S. C. 207, 57 S. E. (2d) 257, 260, this Court said:

" 'The principles governing liability in a case of this kind are very simple and well settled. One who operates a mercantile establishment is not an insurer of the safety of those who enter his store but he does owe them the duty of exercising ordinary care to keep the aisles, passageways, and such other parts of the premises as are ordinarily used by customers in transacting business in a reasonably safe condition. *Bradford v. F. W. Woolworth Co.,* 141 S. C. 453, 140 S. E. 105; *Pope v. Carolina Theater,* 172 S. C. 161, 173 S. E. 305; *Perry v. Carolina Theater,* 180 S. C. 130, 185 S. E. 184; *Anderson v. Belk-Robinson Co.,* 192 S. C. 132, 5 S. E. (2d) 732; 38 Am. Jur., page 791. Our inquiry is whether there is any evidence from which a violation of this duty may be reasonably inferred.'

"In the case of *Anderson v. Belk-Robinson Co.,* 192 S. C. 132, 5 S. E. (2d) 732, 733, this Court announced the following rule:

" 'In *Bradford v. F. W. Woolworth Co.,* 141 S. C. 453, 140 S. E. 105, we laid down the rule, deduced from the weight of authority, that a merchant who invites the public to his premises is not an insurer of the safety of his patrons, and is therefore not liable for injuries caused by some defect in the premises, in the absence of any evidence tending to show that he or his agents knew or should have known, by the exercise of reasonable diligence, of the defect. This principle was reaffirmed in *Pope v. Carolina Theater,* 172

S. C. 161, 173 S. E. 305; *Perry v. Carolina Theater,* 180 S. C. 130, 185 S. E. 184.'

"It is elementary that in order for a plaintiff to recover damages there must be proof not only of injury, but also that it was caused by the actionable negligence of the defendant. It should also be kept in mind that the doctrine of *res ipsa loquitur* does not apply in this State. *Perry v. Carolina Theater,* 180 S. C. 130, 185 S. E. 184.

"It is well settled in passing upon a non-suit, directed verdict or judgment *non obstante veredicto,* that the testimony and all inferences therefrom must be taken most strongly against the defendant, and considered in the light most favorable to the plaintiff; and if there is any testimony tending to prove any one or more of the specifications of negligence, the motions should be refused. *Mullinax v. Great Atlantic & Pacific Tea Co.,* 221 S. C. 433, 70 S. E. (2d) 911."

We quote further from the *Hunter case* the following:

"It has been held in numerous cases in other States, that in order for a customer to recover damages for injuries sustained by falling on some vegetable matter in an aisle, there must be proof that the storekeeper had actual knowledge of the presence of debris upon the floor, or that it had been on the floor long enough to charge the storekeeper with constructive notice of its presence. *F. W. Woolworth Co. v. Ney,* 239 Ala. 233, 194 So. 667; *Kroger Grocery & Baking Co. v. Dempsey,* 201 Ark. 71, 143 S. W. (2d) 564; *Bosler v. Steiden Stores,* 297 Ky. 17, 178 S. W. (2d) 839; *Jakel v. Brockelman Bros.,* 91 N. H. 453, 21 A. (2d) 155; *Coyne v. Mutual Grocery Co.,* 116 N. J. L. 36, 181 A. 314; *Brown v. S. H. Kress Co.,* 66 Ga. App. 242, 17 S. E. (2d) 758."

We agree with the trial Judge that there was no evidence of actual or constructive notice to the respondent of the alleged oil spot upon the garage floor and no evidence that this condition was created by the respondent.

We conclude, after giving the appellants the benefit of every reasonable inference to be drawn from the testimony, that they have failed to prove the respondent was guilty of any acts of negligence which would warrant the submission of this issue to the jury. The trial Judge was correct in granting the motion of the respondent for judgment *non obstante veredicto*.

Judgment of the lower Court is affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.