14282

PERRY v. CAROLINA THEATRE

(185 S. E., 184)

October, 1935.

*Messrs. Herbert & Dial,* for appellant,

*Messrs. Legare Bates* and *Cole L. Blease* for respondent.

April 16, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The defendant operates a moving picture theater in the City of Columbia, which is known as the Carolina Theater. The plaintiff, a boy thirteen years of age, recovered a judgment of $250.00 actual damages against the defendant, arising out of its alleged negligence in permitting a stray dog to enter its theater and bite him on the leg while he was attending the exhibition of a moving picture therein, from which he alleged that he suffered serious injury.

At the conclusion of all the testimony the defendant made a motion for a directed verdict, upon the ground that the testimony showed no actionable negligence on the part of the defendant company; there being no testimony that the defendant had any knowledge or notice whatever of the presence of a dog in its theater on this occasion. This motion was overruled, and the case was submitted to the jury. The complaint alleged willfulness, but the trial Judge directed a verdict in favor of the defendant as to punitive damages.

After the rendition of the verdict in favor of the plaintiff, the defendant entered a motion for a new trial on the minutes of the Court, on the ground that there was no evidence to support the verdict. This motion was denied by the trial Court, in a lengthy and elaborate order, in which the trial Judge expressed doubt as to whether he was right or wrong on the question of the alleged negligence of the defendant, but he reached the conclusion that there was at least an inference of negligence.

No case is cited in the order of the trial Court nor in the briefs of counsel for the appellant or for the respondent which is analogous to the facts in this case.

Although there are thousands of moving picture theaters in this country, attended by millions of people, and although there are in the United States probably a million dogs, of every kind, description, and station in life, an extended

search of the authorities has not brought to light a single case similar to this one. This would seem to argue one of four things: (a) Dogs do not frequent theaters; (b) if they do, they are well behaved; (c) a vigilant watch is maintained to keep them out; (d) if present and ill-disposed, our people suffer their wounds or their humiliation in silence. However, merely because a particular thing has never happened before is no conclusive argument that it cannot or may never occur. There must always be, of necessity, a first link in a chain, a starting point, and we seem to have it here.

The testimony for the plaintiff tends to show: That one afternoon in August, 1934, he purchased an admission ticket from the defendant, and entered its theater for the purpose of seeing a very popular picture, the exhibition of which was attended by large crowds of people. He gives the following account as to how the accident occurred: "As I was walking down the aisle, I was just walking down and looking up at the picture, and all at once I felt something, and I turned around, and it was a dog, and it bit me on the leg. And I did not say anything but walked on down and told my sister."

His sister had preceded him to the show, and she and the plaintiff remained in the building some time looking at the picture. They left the theater shortly before dark, went home, and reported to their mother that the plaintiff had been bitten by a dog in the theater. The mother thereupon went to the theater with the plaintiff, and interviewed the defendant's ticket agent, who told her that he had not seen any dog. He called one of the ushers, who said that he had chased a dog out of the theater about thirty minutes before. This statement is denied by the usher. The assistant manager of the defendant was then called, and was shown the wound on the plaintiff's leg, and where the dog had torn his pants. Acting upon the suggestion of the assistant manager, the boy's mother took him to a physician, who gave him the anti-rabies treatment, which was furnished free by the government.

The sister of the plaintiff testified that the plaintiff came and sat beside her in the theater, and told her that a dog had bitten him on the leg. She does not state that he told her that the biting had actually occurred in the theater, nor does it appear that the plaintiff, while he was in the building, told any one else that he had been bitten by a dog. His sister further stated that on the afternoon in question she did not see any dog in the theater; that on previous occasions she had seen dogs down by the steps of the theater, but that the ticket agent would always run them out.

The testimony for the defendant tends to show that no dog had ever been seen in the theater prior to the time of the accident, nor had any dog been seen in the theater on the afternoon the boy alleged that he was bitten. At the time of the alleged occurrence there was on duty at the theater the receiving ticket agent, at the inner portal, the assistant manager, the assistant floor man, who is also known as the regular door man, the chief usher, who supervises the service staff, and whose duty it is to oversee the several ushers. All of these employees testify positively that they did not see any dog in the theater; that occasionally dogs would follow children into the outer lobby at the box office, near the street, but that they were always promptly chased away, and that none to their knowledge had ever gotten into the theater itself; that their instructions were to keep dogs out of the theater.

The plaintiff is the only witness who testified that he saw the dog. He made no outcry at the time, and made no complaint to the defendant until several hours later, when he went with his mother to interview the theater management, as already stated. There is an absolute dearth of testimony as to how the dog got into the theater, or that the defendant had the slightest knowledge or notice of its presence prior to the alleged biting. As to necessity of knowledge, see *Bradford v. F. W. Woolworth Co.*, 141 S. C., 453, 140 S. E., 105.

The trial Court submitted the case to the jury on the issue of actionable negligence on the part of the defendant.

It was held in the recent case of *Pope v. Carolina Theater,* 172 S. C., 161, 173 S. E., 305, that the proprietor of a theater or other place of public amusement is not an insurer of the safety of his patrons, and is held to ordinary care only. In this case, a patron sued the defendant to recover damages alleged to have been suffered when she tripped over a defective rug and fell.

A similar rule was announced in *Bradford v. F. W. Woolworth Company,* 141 S. C., 453, 140 S. E., 105, with reference to the liability of a merchant who invites the public to his premises.

It has very generally been declared that the proprietor of a theater or other public place of amusement must exercise that degree of care which under the same or similar circumstances would be exercised by an ordinarily careful or prudent man. 62 C. J., 867.

Of course, ordinary or reasonable care is always a relative term, and no absolute test can be given as to what constitutes the exercise thereof by a proprietor of a place of public amusement. Due or ordinary care varies with the situation and circumstances in each particular case; the standard of care, however, remains the same, and it must be proportionate to the danger known or reasonably to be apprehended.

It was also explicitly held in *Pope v. Carolina Theater, supra,* that theater owners are not held to the same degree of care with reference to its patrons as are common carriers to their passengers. The rule is well established in this state that it is the duty of a carrier to use the highest degree of care to protect a passenger from the attacks of a fellow passenger when the carrier has knowledge of the existence of danger from this cause, or of facts from which the danger may reasonably be anticipated. *Spires v. A. C. L. R. Co.,* 92 S. C., 564, 75 S. E., 950; *Taylor v. A. C. L. R. Co.,*

78 S. C., 552, 59 S. E., 641; *Franklin v. Atlanta & C. Air Line R. Co.,* 74 S. C., 332, 54 S. E., 578.

We have been able to find but four cases dealing with the liability of a common carrier for injury to a passenger caused by a dog, and none with reference to the liability of innkeepers and hotel proprietors under similar circumstances. In *Westcott and Wife v. Seattle, Renton & Southern Railway Company,* 41 Wash., 618, 84 P., 588, 4 L. R. A. (N. S.), 947, 111 Am. St. Rep., 1038, the action was brought to recover for damages to the clothing and to the sensitiveness of the defendant Margaret Westcott, while a passenger upon one of appellant's cars. These damages were inflicted by a four months old puppy, brought into the car by another lady passenger, and permitted by the conductor to remain there. Upon these facts a verdict for the plaintiff was affirmed.

"In *Barrett v. Malden & M. R. Co.,* 3 Allen [Mass.], 101, a horse railroad company was held liable to a person bitten by a dog as he was entering one of its cars as a passenger. There was evidence that the dog which inflicted the injury was kept on the premises of the defendant for several weeks by a person in its employment who had charge of its stables, and also evidence which tended to show that this was done with the knowledge and implied assent of its general agent or superintendent.

"In *Trinity & S. R. Co. v. O'Brien,* 18 Tex. Civ. App., 690, 46 S. W., 389, a dog which was to be shipped on the train was tied by the porter to a truck upon the platform in front of the waiting room of the station, so that the dog could reach the door of that room. There was evidence, which was contradicted, that the porter was informed that the dog was vicious. Plaintiff went to the station for the purpose of taking passage upon the train, and, just as she had placed one foot in the door of the waiting room, she was seized and bitten by the dog. She had not purchased a ticket, nor in any way made known to the company's agents her purpose to become a passenger over its road. Verdict and

judgment were rendered for plaintiff in the trial Court, but the members of the appellate Court differed upon the question whether or not plaintiff, when hurt, was a passenger, as well as upon the further one as to the degree of care which the carrier owed to her, if a passenger, while at the station and before actually entering upon the cars. A majority of the Court held that the jury should have been instructed that it was the duty of the company to exercise that degree of care which persons of ordinary prudence would employ under the same circumstances, and a charge requiring more than this was erroneous.

"In The Lord Derby [C. C.], 4 Woods, 247, 17 F., 265, a pilot taken on board at the mouth of the Mississippi River while on the voyage to New Orleans was seriously bitten by a dog which had been brought, as part of the cargo, from Europe for sale in this country. The dog was suspected of a disposition to bite strangers generally, and was kept chained under the cabin table where he was concealed from view. The cabin was the place where the pilot had been assigned to sleep, and where he had a right to go. The ship was held liable." These latter cases appear in the note in the case of *Westcott v. Seattle, Renton & Southern Railway Company, supra.*

It will be observed that in each of the foregoing cases liability of the defendant carrier was sustained, either upon the ground that the dog in question was permitted in the car, or was vicious, and known to be so, or else was in the possession and under the control of the defendant.

The cases dealing with the liability of one who owns or keeps an offending animal which is domesticated generally hold that such owner must be shown to have notice of the vicious propensity of the animal.

Notwithstanding the positive testimony of the witnesses for the defendant in the case at bar that no dog was in the body of the theater, on this inquiry we must accept as true the statement of the plaintiff that a

dog was in the theater, and that it bit him. Upon what acts of negligence proven in this case can the verdict be predicated? We must confess our utter inability to find even a scintilla of evidence to support this verdict. Under applicable principles of law, what did the defendant do which it should not have done? What did it leave undone which it should have done? The evidence does not say, but the implication is that we must apply the rule of absolute liability upon the mere showing that the dog was present, and that the boy was bitten, without proof of any negligent act or omission of the defendant. It is elementary that in order for a plaintiff to recover damages, he must prove not only his injury, but also that it was caused by the actionable negligence of the defendant.

The testimony in the case discloses that the picture being shown on the afternoon in question was a very popular picture, attended by throngs of people. The only reasonable inference, insofar as the dog is concerned, is that it came in unobserved, either with its owner in the crowd, or else was seeking its owner. There is no allegation or proof that the defendant failed to employ sufficient servants to reasonably protect the plaintiff, or that they were incompetent.

We think that the evidence entirely fails to show that the defendant did not exercise reasonable care to guard against the presence of the dog under the facts of the case.

In order to sustain the judgment in this case, the Court will have to do one of two things: Either it will have to change the rule to the effect that the owner of a theater or place of amusement is not an insurer of the safety of its patrons, as was held in the case of *Bradford v. F. W. Woolworth Co., supra,* and in the case of *Pope v. Carolina Theater, supra;* or it will have to hold that the doctrine of *res ipsa loquitur* does apply in South Carolina, when it has been repeatedly held that such doctrine does not exist in this State. We discover no occasion here to adopt either alternative.

There can be no doubt about the duty of the defendant to exercise reasonable care to keep dogs out of its theater, not alone because some dogs are vicious, but also on account of their known mischievousness, and their natural tendency to indulge in obnoxious habits. It has not been shown that the defendant failed to use ordinary care in performing this duty. It follows that the directed verdict should have been granted.

It is the judgment of this Court that the judgment of the lower Court be reversed, and that this case be remanded to the County Court for Richland County for entry of judgment in favor of the defendant under Rule 27.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.