RACHEL SMITH, EMPLOYEE, v. MECKLENBURG COUNTY CHAPTER AMERICAN RED CROSS, EMPLOYER; TRAVELERS INSURANCE COMPANY, CARRIER.

(Filed 12 December, 1956.)

**1. Master and Servant § 53b—**

The Workmen's Compensation Act contemplates but a single claim for disability for an injury regardless of whether the injury be total or partial, temporary or permanent.   G.S. 97-2.

**2. Master and Servant § 53a—**

An agreement for the payment of compensation when approved by the Industrial Commission is as binding on the parties as an order, decision or award of the Commission.

**3. Master and Servant § 53c—**

The parties entered into an agreement for compensation for total temporary disability for a specified number of weeks, and the injured employee executed a receipt stating that claim for further compensation for change of condition would have to be made within one year from the date of final payment under the agreement.   More than a year thereafter, upon discovery that the injury resulted in a permanent partial disability, the employee filed claim therefor.   *Held:* The claim was barred by G.S. 97-47.

JOHNSON, J., not sitting.

APPEAL by defendants from *Rudisill, J.,* 26 March, 1956 Special Term, MECKLENBURG.

Plaintiff seeks compensation for permanent partial disability.   Payment has been made for the period plaintiff was out of work.

A hearing was had by a deputy commissioner of the Industrial Commission in April 1955.   He found these facts:   Plaintiff was an employee of Mecklenburg County Chapter of American Red Cross.   Travelers Insurance Company (hereinafter referred to as carrier) was its insurance carrier.   Plaintiff and carrier filed with the Industrial Commission its Form 21, entitled "AGREEMENT FOR COMPENSATION FOR DISABILITY," by which the parties stipulated (a) that they were bound by the North Carolina Workmen's Compensation Act; (b) that plaintiff, on 2 October, 1952, at Cherry Point, N. C., sustained an injury by accident arising out of and in the course of her employment; (c) that her average weekly wage was $57.69; (d) that disability resulting from the injury began 4 November, 1952; (e) that "the employer and the insurance carrier hereby undertake to pay compensation to the employee at the rate of $30.00 per week beginning 11-11, 1952, and continuing for necessary weeks"; the first payment of compensation amounting to $60 was paid 29 November, 1952.

SMITH *v.* RED CROSS.

The deputy commissioner further found that said agreement was approved by the Industrial Commission on 9 December, 1952, and pursuant to said agreement, carrier paid to claimant compensation in the amount of $90. The deputy commissioner found that plaintiff, on 9 December, 1952, executed the Commission's Form 27. Form 27 bears the notation: "THE USE OF THIS FORM IS REQUIRED UNDER THE PROVISIONS OF THE WORKMEN'S COMPENSATION ACT." The instrument which plaintiff executed is as follows:

"CLOSING RECEIPT

NORTH CAROLINA INDUSTRIAL COMMISSION

This is to acknowledge that I have this date received from The Travelers Insurance Co. the sum of $30.00; that I have heretofore received weekly payments in the total amount of $60.00; that I have received a total of $90.00 as compensation for injury sustained on or about 10-2, 1952, while employed by The American National Red Cross.

I returned to work on 12-2, 1952, at a wage of $57.69 per week.

I understand that my compensation payments stop when I sign this receipt. I also understand that if my condition changes for the worse, I can claim further compensation only by notifying the Industrial Commission within one year from the day I received my last compensation payment.

Last compensation payment received on Dec. 9, 1952.

| Witness: | Employee or Dependent: |
|---|---|
| s/Mrs. Mary E. Snyder | s/Rachel Smith |
| 508 E. Morehead St. | 2134 Crescent Ave. |
| Charlotte, N. C. | Charlotte, N. C. |

Manual Classification Code No. 8742
Type of Disability (use Commission's Code) T
Number of Weeks Temporary Total      3
            From 11-11-52 to 12-2-52
Number of Weeks Temporary Partial
            From            to
Number of Weeks Permanent Partial
            From            to

| | |
|---|---|
| Amount of Compensation Paid | $90 00 |
| Second Injury Fund (Major) (Minor) | $ |
| Total Medical Paid (including nursing, hospital, drugs, etc.) | $310 55 |
| Artificial Members | $ |
| Funeral Benefits | $ |

Does this report close the case?   (Yes or No):
Yes

                The Travelers Insurance Company (Carrier)
                    s/A. C. Newson            2-12-53"

The commissioner found the injury of 2 October, 1952, was to plaintiff's right leg, that following the injury and until the hearing in April 1955, plaintiff had been under the care of an orthopedist, and she now has a permanent partial disability to her right leg as a result of the accident of October 1952. He found that plaintiff failed to file her claim with the Industrial Commission for permanent partial disability until after 9 December, 1953. The deputy commissioner thereupon concluded that plaintiff's claim for additional compensation was barred by G.S. 97-47. He denied the claim. Plaintiff duly excepted and appealed to the full Commission. The full Commission supplemented the findings of fact by the trial commissioner as follows:

"5. That the physician who was treating plaintiff advised defendants on May 26, 1954, he was still treating her for her injury; that defendants thereupon notified said physician they denied liability for this treatment on the grounds that the claim was barred by the statute of limitations.

"6. That as a result of the accident giving rise to this claim plaintiff has sustained a 20% permanent partial disability to her right leg."

Except as thus amended and supplemented, the Commission approved and adopted the findings of fact made by the deputy commissioner. A majority of the Commission (Commissioner Gibbs dissenting) concluded as a matter of law that G.S. 97-47 had no application to the facts of this case; that plaintiff was not seeking a review and alleged no change in her condition, that she simply stated that she had a 20% permanent partial disability to her right leg for which no compensation had been paid as provided in G.S. 97-31; that under the agreement of 26 November, 1952, the cause was still pending before it awaiting adjudication. It thereupon awarded compensation to plaintiff for the permanent partial disability found to exist. From this award defendants duly excepted and appealed to the Superior Court. The Superior Court overruled the exceptions filed by defendants to the findings of fact and the conclusions of law and affirmed the award made by the Industrial Commission. From the judgment entered thereon, defendants appealed.

*Carpenter & Webb for plaintiff appellee.*
*Boyle & Potter for defendant appellants.*

RODMAN, J. The judgment and assignments of error present for consideration this question: Does G.S. 97-47 bar plaintiff's claim for additional compensation?

The statute authorizes the Commission, on the application of a party in interest or on its own motion on the grounds of a change in condi-

tion, to review any award, increasing or diminishing the compensation to be paid. By express language of the statute "no such review shall be made after twelve months from the date of the last payment of compensation pursuant to an award under this article . . ."

The Commission, in making the award for permanent partial disability, held that the filing of the "AGREEMENT FOR COMPENSATION FOR DISABILITY" tolled the statute of limitations (G.S. 97-24) and gave the Commission authority to hear the claim for permanent disability. It said: "The Commission thus obtained jurisdiction of this case until the matter had been adjudicated. One of the matters for adjudication in this case was the question of specific disability to the plaintiff and payment of compensation therefor under the provisions of G.S. 97-31. Such question was never adjudicated by the Commission, *nor settled by any agreement between the parties.* The question of specific disability was therefore pending before the Commission." (Emphasis added.)

The amount of compensation payable to an employee as a result of an accident is predicated on the extent of the disability resulting from the accident. Disability is defined by the statute as incapacity because of an injury to earn wages, G.S. 97-2. Disability may take any of several forms. It may be total or partial and may or may not be permanent. The statute fixes the *quantum* of disability for certain injuries, G.S. 97-31.

The common law gives but one right of action for injuries resulting from negligence. The cause of action cannot be split and recovery had for the various kinds of damage resulting from the negligence. *Eller v. R. R.,* 140 N.C. 140; *Underwood v. Dooley,* 197 N.C. 100, 147 S.E. 686; *Insurance Co. v. Motor Lines,* 225 N.C. 588, 35 S.E. 2d 879. An accident resulting in compensable injuries to an employee likewise gives only one right of action or claim to the employee, and any award made should, within the statutory limits, compensate for the disability, irrespective of the number of elements which go to make up the disability. Apparently the parties recognized this sound principle when they filed with the Commission the "AGREEMENT FOR COMPENSATION FOR DISABILITY." It is expressly stipulated that the parties "are subject to and bound by the provisions of the North Carolina Workmen's Compensation Act." They agreed that employee sustained an injury by accident arising out of and in the course of employment and fixed the date of the accident. They stipulated the weekly wage and the date disability began. In response to the query as to the injuries sustained, they said: "Plane hit air-pocket throwing injured to floor." The agreement provided for compensation to the employee "beginning 11-11, 1952, and continuing for necessary weeks," clearly implying that compensation would be paid for the disability sustained in conformity with the pro-

visions of the Compensation Act. Manifestly, this was the understanding of the Commission when the agreement was filed with it. Otherwise, it would not have, on 9 December, 1952, approved the agreement. In fact, the Commission now says this agreement to pay compensation suffices to toll the statute of limitations for filing claims, G.S. 97-24, and is the basis on which it orders additional payment.

Plaintiff returned to work on 2 December, 1952, at the same wage she was receiving prior to the injury. She has worked continuously since 2 December, 1952. On 9 December, 1952, a week after she returned to work, settlement was made with her by the carrier for what it then thought was the extent of her disability. The carrier finished paying her for the time she lost from work. She executed the Commission's Form 27 designated "CLOSING RECEIPT." The receipt describes the injury using the Commission code as "T," meaning temporary total. It shows no compensation paid for permanent partial disability. It is stated in boldface type that payments stop when the receipt is signed, with the further statement that plaintiff understood that if her condition changed for the worse, further compensation could only be claimed by notifying the Commission within one year from the date of the last compensation payment. This receipt was duly and promptly filed with the Commission.

Plaintiff testified that she did not read the receipt before she signed it. It was handed to her by her employer. She was busy with other work. She is educated and concedes that she has the ability to read and understand what the receipt said. There is no suggestion of fraud or misrepresentation. It is manifest that none of the parties, on 9 December, 1952, realized that the injury which the plaintiff sustained would result in permanent disability. There is no specific finding on that fact, but there is nothing in the findings which negatives that conclusion.

As early as 1933 this Court held that where compensation for disability was paid pursuant to an agreement, the right to seek additional compensation was barred unless claim was filed, within one year from the last payment of compensation, as required by the statute, G.S. 97-47. *Lee v. Rose's Stores*, 205 N.C. 310, 171 S.E. 87. The *Lee* decision was approved in *Knight v. Body Co.*, 214 N.C. 7, 197 S.E. 563. These cases were followed in 1950 by *Tucker v. Lowdermilk*, 233 N.C. 185, 63 S.E. 2d 109. It is there said: "An agreement for the payment of compensation when approved by the Commission is as binding on the parties as an order, decision or award of the Commission unappealed from, or an award of the Commission affirmed upon appeal." These cases were cited and approved this year. *Paris v. Builders Corp.*, 244 N.C. 35. We are dealing with a matter of statutory construction. Notwithstanding the lapse of time since the decision in *Lee v. Rose's*

*Stores, supra,* and the cases which have followed it, the Legislature has not modified the statute so as to affect those decisions and their, application to this case.

Our decisions as to the effect of an agreement to pay compensation for disability are in harmony with decisions in other states. The Supreme Court of Vermont, speaking with respect to agreements between employer and employee, said: "The original agreement approved by the commissioner, being for an indefinite time, was equivalent to an award of such compensation . . ." *Bosquet v. Howe Scale Co.,* 120 A. 171; *Michelson v. Industrial Commission,* 31 N.E. 2d 940 (Ill.); *Hartford Accident & Indemnity Co. v. Industrial Com'n.,* 151 N.E. 495 (Ill.).

Practical considerations support the interpretation given the statute. The thirteenth biennial report of the North Carolina Industrial Commission shows 60,961 industrial injuries for the fiscal year 1952-1953 and 57,293 injuries for the year '53-'54. The cost resulting from these injuries was $7,389,338 in '52-'53, and $5,525,270 for '53-'54. In '52-'53 there were requests for hearings by the Commission in 920 cases, and in '53-'54 requests for hearings in 1,053 cases. It thus appears that more than 95% of all industrial injuries of the last biennium were disposed of without the necessity of calling on the Commission for formal hearings. The Commission was called upon to hold hearings in less than 20,000 cases from 1 July, 1929, through 30 June, 1954, approximately one-third of the industrial accident cases reported in a single year. If the theory on which the Commission proceeds in this case is a correct interpretation of the Act, it is doubtful if any employer or carrier would make settlement with an injured employee until a hearing was had and a formal award made. If the agreement to pay compensation leaves the case pending before the Commission to be heard five, ten, or twenty-five years hence at the option of the employee on the assertion that all of his disabilities were not included in the "AGREEMENT FOR COMPENSATION FOR DISABILITY" and "CLOSING RECEIPT," a Herculean problem would at once confront the Commission. Certain it is that employers and carriers would immediately demand that the extent of their liability be determined by a formal hearing at a time when testimony with respect to the scope and extent of the injuries would be available. The language of *Barnhill, J.* (later *C. J.*), in *Biddix v. Rex Mills, Inc.,* 237 N.C. 660, 75 S.E. 2d 777, is pertinent. He said: "The underlying spirit and purpose of the Act is to encourage and promote the amicable adjustment of claims and to provide a ready means of determining liability under the Act when the parties themselves cannot agree. The Industrial Commission stands by to assure fair dealing in any voluntary settlement and to act as a court to adjudicate those claims which may not be adjusted by the parties themselves."

To meet the problem, typified by this case, of changed physical condition following an award, our statute provides that the employee may, within one year from the final payment, make application for additional compensation because of a changed condition. Where the harmful consequences of an injury are unknown when the amount of compensation to be paid has been determined by agreement but subsequently develops, the amount of compensation to which the employee is entitled can be redetermined within the statutory period for reopening. It is a "change in condition" as the term is used in the statute. Speaking on this subject, the Supreme Court of Oklahoma, in *Skelly Oil Co. v. Standley*, 297 Pac. 235, said: "It is insisted that disability resulting from the injury to the arm was not claimed or made a part of the agreed statement of facts, and, therefore, the commission is without jurisdiction to act in review of the aggravated condition, as contemplated by section 7296, *supra*. This is tantamount to saying that the full effect of the accident must be known by the claimant and reported by him within the statutory period, and, if not, compensation cannot be allowed. Such a holding would be contrary to the spirit of the act as well as the liberal interpretation policy adopted. Moreover, section 7296 provides for a review of an award 'on the ground of a change in conditions.' A liberal interpretation impels us to hold that the change in condition, when proven, permits a continuing jurisdiction to end, diminish, or increase compensation previously awarded, even though the change in condition manifests itself in injuries not expressly enumerated in the original award, but yet attributable to the original accident."

In *Utah Fuel Co. v. Industrial Commission*, 159 P. 2d 877, 162 A.L.R. 1457, it appeared that one Gerard, an employee, sustained an injury while in the employment of plaintiff. It was anticipated that it would be necessary to amputate one of his legs. Settlement was made with him for the approximate amount he would be entitled to receive under the Workmen's Compensation Act. Subsequently it became necessary to amputate the other leg. The Supreme Court of Utah said: "Under these circumstances the commission did not err in assuming jurisdiction and granting a further award in consonance with the changed condition and in conformity with our Workmen's Compensation Act."

A copious note dealing with the statutes of the various states and the decisions thereunder with respect to the modification or extensions of awards because of changed conditions will be found in 165 A.L.R., beginning on p. 12.

The agreement for compensation for disability approved by the Commission and the payment made by the carrier followed by the execution of the closing receipt by plaintiff employee more than one year prior to the filing of application with the Commission for an addi-

tional award puts the case beyond the time given by G.S. 97-47 in which to claim additional compensation.

The judgment of the Superior Court affirming the award made by the Industrial Commission is

Reversed.

JOHNSON, J., not sitting.