**Peggy E. AMICK, Plaintiff,**

v.

**GOODING AMUSEMENT COMPANY, Inc., Defendant.**

**Civ. A. No. AC–1321.**

United States District Court
D. South Carolina,
Columbia Division.

Jan. 6, 1966.

George H. Davis, Jr., Columbia, S. C., for plaintiff.

Thomas E. McCutchen, of Whaley & McCutchen, Columbia, S. C., for defendant.

HEMPHILL, District Judge.

Defendant seeks summary judgment as permitted by Rule 56, Rules of Civil Procedure, under proper circumstances.[1] Before this Court were the pleadings, deposition of plaintiff as taken at defendant's insistence, affidavit of plaintiff's husband, pictures of defendant's machinery not objected to by plaintiff, affidavit of defendant's manager, and certain interrogatories propounded to defendant by plaintiff.

The gravamen of plaintiff's cause of action against defendant in the operation of an amusement at the State Fair in Columbia is found in Paragraph 5 of the Complaint:

5. On or about Thursday, October 24, 1963, while plaintiff was riding as a passenger in a cab on the said apparatus, it was under the exclusive management and control of defendants, and was so negligently, carelessly and recklessly operated, managed, and maintained by defendants that plaintiff was proximately caused to be thrown to the floor, thereby sustaining severe and permanent injuries herein described.

This Court is mindful of the hesitancy of courts of appellate resort, and many trial courts, to render summary judgment in negligence actions.[2] On previous occasions the motion has been denied,[3] usually on matters of law. Here we have a question of whether *fact*(s) exists sufficient for controversy, for recovery. The decisions favoring the drastic remedy are few.[4] As noted in Mickle[5] supra:

A better formula would be that the party approving the motion is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists.

With the limit, and the extent of the authority under the Rule thus explored, the Court proceeds.

The facts reveal that plaintiff, a twenty-three year old wife and mother, accompanied her husband, a Columbia Fire Department fireman to the South Carolina State Fair on the evening of October 24, 1963 and "started around the Midway."[6] At approximately eight thirty p. m., they decided to ride in the "Flying" Cage, and were allowed free amusement by virtue of his uniform. They had ridden in 1962 and proceeded to ride again. The Flying Cage is an amusement and occupants, or "riders", enter a cage, consisting of metal wires and bars, completely enclosing occupants, who stand on a wooden floor. Movement is entirely at the choice of occupants or riders. The evidence before the Court,

---

1. "Upon a claim * * * as to which there is no genuine issue of material fact and upon which the moving party is to prevail as a matter of law." Wright on Federal Courts, 1963 Ed. p. 385, Ch. 10, Sec. 99.

2. See Barron and Holtzoff, Federal Practice and Procedure with Forms, Vol. 3 (Wright rev. Ed.) § 1232.1 (p. 106 of Vol. 3): "Summary judgment will not usually be feasible in negligence cases, where the standard of the reasonable man must be applied to conflicting testimony, as it is in other kinds of litigation. * * * But where there is no genuine issue as to any material fact, and the defense is good as a matter of law, the motion should be granted."

3. Frankel v. Kurtz, D.C., 239 F.Supp. 713. Mickle v. Lipstock, E.D.S.C.1965, 39 F.R.D. 58.

4. Wilkinson v. Powell, 149 F.2d 335 (5th Cir. 1945); Surkin v. Charteris, 197 F. 2d 77 (5th Cir. 1952); Warner v. Lieberman, 154 F.Supp. 362 (D.C.Wis.1957); Sanders v. Nehi, 30 F.Supp. 332, (D.C. Tex.1940); American Airlines, Inc. v. Ulen, 87 U.S.App.D.C. 307, 186 F.2d 529.

5. See Wright on Federal Courts (1963 Ed.) p. 387 n. 8.

6. Provincially used to describe the area of rides and amusements.

as revealed by the deposition of Mrs. Amick is:

Q. How did you get on the ride? You just walked up and got in it?

A. Walked up the steps and stepped in.

Q. The Flying Cage Ride, when it is in a stopped position, is such that you walk right off of a platform into the ride?

A. Yes sir.

Q. When you got inside of the ride, did the attendant close the door?

A. Yes sir.

Q. You were then inside with your husband?

A. Yes sir.

Q. There is a bar there to hold onto isn't there? A railing inside?

A. A Metal railing.

Q. Where you can put your hands?

A. Yes sir.

Q. That's true at either end of it?

A. Yes sir.

Q. And the sides of it are a sort of fine mesh wire?

A. Yes sir.

Q. But there is a bar or railing affair at either end?

A. Yes sir.

Q. Isn't it true Mrs. Amick, that the railing is at a height, say about as high as your waist, where you would hold on?

A. I'm not positive but I think it's a little bit higher.

Q. You certainly don't have to stoop over to reach it do you?

A. No sir.

Q. It's up in a comfortable area where you can put your hands on it?

A. Yes sir.

Q. The Flying Cage Ride is not motorized in any way is it?

A. I don't know.

Q. Well, the Flying Cage itself is not pushed around by any kind of a propeller or a drive belt at all is it?

A. Not to my knowledge.

Q. Isn't it true that the only way the Flying Cage moves is that the people in it make it move?

A. Yes sir.

Q. And that consists of the people in it doing what you knew as a child, as "pumping"? Is that right?

A. Yes.

Q. If you don't "pump", the ride doesn't go anywhere does it?

A. Well, they start it rocking.

Q. They start it by pushing it once to get it rocking but if you don't "pump", like a top, it will come to a standstill without moving?

A. I guess so.

 * * * * * *

Q. And the more you pump it the more it swings?

A. Yes sir.

Q. So then if you pump hard enough, it will go right on over in a circle of 360 degrees?

A. Yes sir.

Q. But the people inside the cage are not upside down, they are always standing in an upright position?

A. Yes sir.

Q. Well, did you and your husband start pumping?

A. Yes sir.

Q. Did you and your husband get the Ride to go over the 360 degrees?

A. Yes sir.

Q. How many times did you go over? A good many times?

A. I don't know.

Q. Several times?

A. I couldn't answer that.

Q. Well, it certainly went over more than one time didn't it?

A. Yes.

Q. When you were pumping were you at one end and your husband at the other end?

A. What do you mean by "end"?

\* \* \* \* \* \*

Q. You could see very clearly couldn't you?

A. Yes sir.

Q. And the Ride was well lighted?

A. Yes sir.

Q. Did your husband observe anything that you know about, on the floor?

A. No sir.

Q. Did he tell you he didn't see anything on the floor?

A. Not in so many words.

Q. But you understood that he didn't see anything on the floor. Is that right?

A. Yes sir.

\* \* \* \* \* \*

Q. Did anything in the Cage come loose?

A. Not to my knowledge.

Q. Did the floor board change its position at all or did it stay in the same position?

A. I don't know.

Q. You didn't see the floor move any did you?

A. No sir.

Q. Did any part of the cage mechanism change its position from the time you got in until you got out?

A. I don't know.

The affidavit of the husband revealed:

\* \* \* [T]hat the deponent and the plaintiff walked into The Flying Cage Ride and the attendant closed the door; that the only light in the enclosed cage was from outside lights on the midway and near the ride and that there was no light in the cage itself; that the floor of the cage was visible but not well lighted; that the deponent did not have time to inspect the floor before the ride was started by the operator; that the deponent and his wife had been riding for a short period of time when the plaintiff suddenly fell to the floor, she attempted to get up but was unable to do so; that the deponent then called to the attendant to stop the ride which the attendant did, the deponent then had opportunity to briefly observe the floor of the cage and notice that there was some sand and foreign matter on the floor and that the floor was a hardwood floor which had been worn rather smooth in the center and that the finish appeared to be worn off. \* \* \*

Defendant's stated grounds for relief are:

(1) The injuries were due to plaintiff's acts or omissions;

(2) Plaintiff assumed the risk incident to operation of the Flying Cage;

(3) Plaintiff's own acts contributed to her injuries;

(4) The defendant is not guilty of any actionable negligence.

Assumption of risk, (2) above, and contributory negligence (3) are inapplicable here. The former is ordinarily applicable where the relationship is of employer-employee, master-servant, or contract; the latter applies where defendant admits, or the evidence shows, initially, negligence on defendant's part. Both are affirmative defenses. If either were in issue here summary disposition would be denied because of factual issue.

Grounds (1) and (4) may be consolidated. The real question is whether there is any showing of actionable negligence on defendant's part, the question of proximate cause being of automatic, necessary, and simultaneous consideration.

It is elementary that plaintiff has the burden of proof and that "on a motion for a nonsuit the evidence and

all reasonable inferences to be drawn therefrom are to be considered in the light most favorable to the plaintiff." [7] It is also elementary that "the so called doctrine of res ipsa loquitur does not apply in this State." [8] This Court therefore screens the material now before it in the light most favorable to plaintiff, willing to risk, for the purpose of justice, the accusation that the court "tried" the cause rather than gave consideration purely for purposes of the motion. But this must stand or fall in the light of the Court's judgment that no factual issue exists. This conclusion emerges after full exploration of the circumstantial possibilities, for as was pointed out in Chaney v. Burgess, supra.

> While our decisions uniformly state that the so called doctrine of res ipsa loquitur does not apply in this State, they have with equal uniformity recognized that negligence may be proved by circumstantial evidence as well as direct evidence. And in determining the sufficiency of circumstantial evidence, the facts and circumstances shown are to be reckoned with in the light of ordinary experience and such conclusions deduced therefrom as common sense dictates. Where circumstantial evidence is relied upon to establish liability, the plaintiff must show such circumstances as would justify the inference that his injuries were due to the negligent act of the defendant, and not leave the question to mere conjecture or speculation.

Until further advised, this Court follows state decisions on matters of the substantive law long recognized as covered by the tent of state jurisdiction and treatment. Erie R. R. v. Tomkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.[9]

What has South Carolina to say on the subject here? What is the rule of liability that this Court should apply?

In Pope v. Carolina Theater, 172 S. C. 161, 173 S.E. 305, the appellate opinion affirmed a judgment of nonsuit where the facts revealed that plaintiff attending, at regular price, a movie, became nauseated by a stench bomb released by an unknown and as she arose from her seat to make exit allegedly caught her heel on the carpet. Noting that "[t]here was not the remotest testimony of any defect in the carpet * *," the Court ruled:

> * * * [T]he proprietor of a theatre or other place of public amusement is not an insurer of the safety of his patrons, and does not contract that there were no unknown defects not discoverable by the use of ordinary means.

Perry v. Carolina Theater, 180 S.C. 130, 185 S.E. 184, presents a situation in which a patron was bitten by a dog in the theatre, claimed defendant's negligence in allowing the dog was the proximate cause of his injury. The Court ruled:

> There can be no doubt about the duty of the defendant to exercise reasonable care to keep dogs out of its theater, not alone because some dogs are vicious, but also on account of their known mischievousness, and their natural tendency to indulge in obnoxious habits. It has not been shown that the defendant failed to use ordinary care in performing this duty. It follows that the directed verdict should have been granted.

The South Carolina law is succinctly stated in the Fourth Circuit Opinion in H. L. Green Co. v. Bowen.[10]

---

7. Chaney v. Burgess, 246 S.C. 261, 266, 143 S.E.2d 521, 523.

8. Ibid. "State" is South Carolina.

9. But ever cognizant of the possibility of change, as treated in an excellent series of presentation at the thirty fifth Judicial Conference of the Fourth Circuit under the leadership of Dean Robert McC. Figg of the University of South Carolina Law School, and reported in Vol. 17, No. 4 (1965) South Carolina Law Review.

10. Associate Justice Dobie in, 223 F.2d 523.

It is well settled in South Carolina, (where this accident happened) and in other jurisdictions that a proprietor of a store is not an insurer of the safety of his customers; and is, therefore, not liable to a customer for injuries caused by some defect or unsafe condition in the premises in the absence of any evidence tending to show that the proprietor or his servants or agents knew, or should have known by the exercise of reasonable diligence, of the defect or unsafe condition. Bradford v. F. W. Woolworth Co., 141 S.C. 453, 140 S.E. 105; Pope v. Carolina Theater, 172 S.C. 161, 173 S.E. 305; Perry v. Carolina Theatre, 180 S.C. 130, 185 S.E. 184; Anderson v. Belk-Robinson Co., 192 S.C. 132, 5 S.E.2d 732; Bagwell v. McLellan Stores Co., 216 S.C. 207, 57 S.E.2d 257. See, also, Miscally v. Colonial Stores, Inc., 68 Ga.App. 729, 23 S.E.2d 860; Norton v. Hudner, 213 Mass. 257, 100 N.E. 546, 44 L.R.A.,N.S., 79; 100 A.L.R. 746; 162 A.L.R. 955, 979.

 Plaintiff positions that all of the evidence is not before the Court, and that certain interrogatories, objected to by defendant, would supply. The interrogatories were never presented to this Court but plaintiff's brief describes "interrogatories relating to persons injured both before and after the plaintiff's injury on the Flying Cage ride." Plaintiff cites Lawrence v. Southern Railway, 169 S.C. 1, 167 S.E. 839. The case is authority for the general philosophy that "[t]he frequent repetition of injury, under similar circumstances, creates a presumption of negligence," citing Danner v. South Carolina Ry., 4 Rich. 329 (S.C. 1851). In the same case, however, is found "Presumptions can never be safe-

ly admitted unless observation and experience have shown that, in the large majority of instances, certain facts have caused, or been followed by, certain results." This Court gives liberal construction to rules of discovery, strict application to rules of evidence. There was insufficient showing before the Court that the interrogatories, if answered, would meet the rule of presumption, hereinabove, or would be competent in an effort to prove negligence.

This Court will not detour from the course of this pursuit, viz.: whether an *issue of fact* exists—in this case to explore whether the presumption is one of law or of fact. If the presumption is one of law it does not present a fact on which to draw issue; if plaintiff seeks a presumption of fact he cannot prevail, as presumptions of fact are not evidence.[11] The Court, then, if the interrogatories were required to be answered, would yet have before it a cause without *issue of fact*.

 Having arrived at the conclusion that there is no evidence of actionable negligence, because, if a defect existed, of which there is no proof, there are no facts revealing, or leading to the circumstantial conclusion that, defendant knew of any defect which did, in fact, exist. What might have been discovered if Federal Rules of Discovery had been availed of, this Court does not surmise.

 Facing the Court then, is the paradox of limited jurisdiction[12] of the Federal Courts expanded to the limits of statutory authority and judicial administration by liberal rules of discovery.[13] The decisions have scored the "cat and mouse"[14] procedure of arriving at a just verdict. This Court, having reviewed with these guidelines, cannot avoid its responsibility by *hoping* that

---

11. Reference is invited to the "Handbook of Evidence," by the late Judge M. S. Whaley, 9 S.C. Law Quarterly No. 4 A, particularly pages 163, 164, wherein is cited, and explained McMillan v. General Am. Life Ins. Co., 194 S.C. 146, 95 S.E. 2d 562, and presumptions generally.

12. Wright on Federal Courts, 1963 Ed. p. 14, citing Turner v. Bank of North America, 1799, 4 Dall. 8, 1 L.Ed. 718.

13. See Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451.

14. Tiedman v. American Pigment Corp., 4th Cir. 1958, 253 F.2d 803, 808.

evidence not now in existence or prospect before this Court, may justify the use of the trial courtroom and its resources for justice to discover what, in pure conjecture, *might have been* discovered, or in stark reality, *should* have been discovered by the use of the rules intended by Congress for that very purpose. The fact that the issue framed by the pleadings is *negligence*, does not avoid the duty to award summary judgment where the facts revealed neither frame nor make dispute of such issue.

Motion granted.

And it is so ordered.

