**Marilyn P. SIEVERS, Individually and as Natural Tutrix of her Minor Children**

v.

**BEECHCRAFT MANUFACTURING COMPANY et al.**

**Civ. A. No. 78–1167.**

United States District Court,
E. D. Louisiana.

July 18, 1980.

Stephen B. Murray, New Orleans, La., for plaintiff.

Harry S. Redmon, Jr., Esmond Phelps, II, James E. Churchill, Jr., New Orleans, La., for defendant Beech Aircraft Corp.

## OPINION

ROBERT F. COLLINS, District Judge.

This matter came on for hearing on June 9, 1980, at the pretrial conference, on the renewed motion of defendant, Beech Aircraft Corporation, for summary judgment. After considering the arguments of counsel, the submitted memoranda, the evidence in the record, and the applicable law, the Court hereby GRANTS the motion of Beech Aircraft Corporation for summary judgment.

The suit arises out of the crash into Lake Pontchartrain of a Beech Air King aircraft, Model 200, on April 18, 1977. The owner of the aircraft was Tidewater Marine Service, Inc. (Tidewater). Five persons were killed in the crash, including Gerald Sievers, who was employed by Tidewater as one of the two pilots for the aircraft. Plaintiff, Marilyn P. Sievers, on her own behalf and as natural tutrix of her minor children, filed this action against Beech Aircraft Corporation, the manufacturer of the aircraft, for the wrongful death of her husband, Gerald Sievers. Plaintiff also filed suit against United Beechcraft, Inc., Hangar One, Inc., Pratt-Whitney Aircraft of Canada, Ltd., Bendix Corporation, Hartzell Propellers, Inc., and Borg-Warner Corporation. Through a combination of court ordered and voluntary dismissals, the only remaining defendant is Beech Aircraft Corporation (Beech).

The aircraft was sold to Tidewater by Hangar One, Inc. on April 25, 1975. Beech completed the manufacturing of the aircraft on October 25, 1975, and Tidewater took delivery of the aircraft at the factory four days later. For the year and a half prior to the accident, the aircraft was owned, operated, and controlled by Tidewater and its employees assigned to pilot and maintain the aircraft. Hangar One, Inc. performed the majority of the maintenance work on the aircraft under a Federal Aviation Administration approved progressive maintenance report. As evidenced by the dismissal of Hangar One, Inc., the maintenance of the aircraft is not at issue in this suit.

On the day of the accident, the aircraft was prepared for a routine flight for the following morning. Gerald Sievers informed Coy Neal, the chief pilot, that the aircraft was ready for flight. According to the National Transportation Safety Board Investigative Report (NTSB Report), on the afternoon of the accident Gerald Sievers met with several of his friends at a nearby auto garage. After a couple of beers, the conversation turned to flying and it was decided that the group would join Gerald Sievers in a flight in the aircraft. The group left for the airport at about 9:15 p.m.

The aircraft departed New Orleans International Airport at about 9:35 p.m. The pilot, Gerald Sievers, had informed the local controller that the aircraft would proceed

eastbound on a test flight for about 10 to 15 minutes. The flight progressed normally until the time it was positioned by radar for its landing approach. Following the radio acknowledgment from the aircraft of routine traffic advisories, the radar controller noted that the aircraft began to lose altitude and to deviate from its assigned course. The controller attempted to warn the aircraft of its loss of altitude several times, however, the controller received no response from the aircraft. Shortly thereafter, the aircraft disappeared from the controller's radar scope, and the Coast Guard and Parish Sheriff's Office were notified that the aircraft had probably crashed in the western area of Lake Pontchartrain.

Following the accident, the National Transportation Safety Board (NTSB) began an exhaustive investigation in order to determine the cause of the crash. Unfortunately, due to the force of the aircraft's impact, most of the major components were totally destroyed. However, a large part of the horizontal stabilizer of the aircraft was recovered. The NTSB examination "showed the component to be twisted/distorted/separated from the vertical fin assembly due to severe impact/overload force. The examination of the separated surfaces showed evidence of overload. No evidence of pre-impact failure was noted." NTSB Report, page 9a. The NTSB concluded that the probable cause of the accident was "undetermined" and listed the "stolen or unauthorized use of [the] aircraft" as a contributing factor. Beech's Exhibit C (The NTSB Probable Cause Sheet).

Beech moves for summary judgment pursuant to Fed.R.Civ.P. 56, on the grounds that there are no genuine issues as to any material facts and that Beech is entitled to judgment as a matter of law. In its *Statement of Uncontested Material Facts,* filed June 3, 1980, Beech contends that there is no genuine issue to be tried as to the following material facts:

> Extensive discovery has developed no information which indicates that any alleged act of negligence by Beech or any

alleged manufacturing defect in the accident aircraft, Beech King Air Model 200, N. 256 TM, Serial No. BB–96, caused or contributed to causing the crash of the aircraft on April 18, 1977.

This is the second time Beech has brought a motion for summary judgment based on the fact that plaintiff has failed to develop any evidence to show that any act of negligence of Beech or any alleged manufacturing defect caused or contributed to the crash of the aircraft. On September 26, 1979, the Court denied Beech's motion in order that the facts concerning the accident could be more fully developed. Plaintiff has engaged in extensive discovery. However, she has not been able to develop any evidence establishing a causal nexus between any alleged deficiency in the aircraft and the crash.

At the outset, it is noted that trial courts are hesitant to render summary judgment in negligence actions; nevertheless, this Court is also aware that summary judgment is proper in those cases in which there is no genuine issue as to any fact that is crucial to plaintiff's cause of action so that as a matter of law he cannot recover. *See,* Wright and Miller Federal Practice and Procedure: ·Civil § 2729, and cases cited therein. In such cases, summary judgment ought to be used to avoid useless trials. 6 Moore's Federal Practice ¶ 56.-02[10]. Where it is clear from the evidence presented at the hearing on a motion for summary judgment that the movant would be entitled to a directed verdict were the case to proceed to trial, summary judgment ordinarily should be granted. *Ruffin v. County of Los Angeles,* 607 F.2d 1276, 1280 (9th Cir. 1976). "Summary judgment has been granted in numerous cases where the plaintiff has failed to show evidence of negligence on the part of the defendant." *Cousins v. Yaeger,* 394 F.Supp. 595, 599 (S.D.Fla.1975). *See also, Wilkinson v. Powell,* 149 F.2d 335 (5th Cir. 1945); *McBride v. Proctor & Gamble Mfg. Co.,* 300 F.Supp. 1150 (E.D.Tenn.1969); *Amick v. Gooding Amusement Co.,* 248 F.Supp. 782 (D.S.C. 1966). Pursuant to the standards of Fed.R.Civ.P. 56, this Court has considered the

submitted pleadings, affidavits, exhibits and depositions in a light most favorable to plaintiff and concludes that there is no genuine issue of material fact as to defendant's negligence to be resolved by the trier of fact, and the defendant is entitled to judgment as a matter of law.

■ The burden of establishing that there is no genuine issue of material fact lies with the moving party, in this case, Beech. Wright and Miller, Federal Practice and Procedure: Civil § 2727. "However, once [Beech] has met that burden by presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial, Rule 56(e) shifts to [the plaintiff] the burden of presenting specific facts showing that such contradiction is possible." *British Airway Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978) *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979) (footnote omitted). *See also*, Fed.R.Civ.P. 56(e); *First Nat. Bank v. Cities Service Co.*, 391 U.S. 253, 288–290, 88 S.Ct. 1575, 1592–1593, 20 L.Ed.2d 569 (1968) (noting absence of "significant probative evidence" in support of contradictory theory); Wright and Miller, Federal Practice and Procedure: Civil § 2727. Although the court has drawn all permissible inferences from the evidence in plaintiff's favor, plaintiff has failed to meet this burden.

Plaintiff's action against Beech rests on the theories of negligence and strict liability for defective products. Jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332(a), and the law of Louisiana is applicable. *See Erie R. R. v. Tomkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny. In *Bernard v. Cessna Aircraft Corp.*, 614 F.2d 1075 (5th Cir. 1980), (Bernard), plaintiff brought an action under Louisiana law for wrongful death arising out of a mid-air collision of two small aircrafts. Because the plaintiff failed to introduce sufficient evidence to show a causal connection between the alleged defect and the collision, the district court granted a directed verdict for the defendant, Cessna Aircraft Corporation. Plaintiff's negligence and strict liability claims were dismissed, and the Fifth Circuit Court of Appeals affirmed, explaining that Louisiana law requires that a plaintiff prove a causal connection in strict liability and negligence claims:

In strict liability cases Louisiana follows a two-tier analysis. First, plaintiff must show that the product was in normal use and was unreasonably dangerous in that use, and, second, that his injuries were caused by the defect. *Perez v. Ford Motor Company*, 497 F.2d 82, 86 (5th Cir. 1974). Pretermitting the argument over sufficiency of proof of normal use, for the reasons we have given in dismissing the negligence claims, plaintiff has not introduced sufficient evidence to make a jury issue of whether the collision was caused by a defective product.

*Bernard*, 614 F.2d 1078.

In the instant case, Beech contends that there is no evidence of any defect in the aircraft. The company further argues that even if there was a defect, there is no evidence of any causal connection between any alleged defect and the crash. After an exhaustive investigation, the NTSB concluded that the cause of the crash was "undetermined." Beech's Exhibit C (The NTSB Probable Cause Sheet). As an alternative theory, Beech argues that pilot error was the likely cause of the crash. Beech further suggests that one of the passengers, Edwin J. Kearney, who had a student pilot certificate and had previously flown the aircraft, might have been operating the craft at the time of the crash. They suggest that because of Mr. Kearney's lack of experience, he suffered vertigo as well as control of the aircraft once he turned in a westerly direction during the landing approach as well as the benefit of the artificial horizon provided by the light of the City of New Orleans. This suggestion is based on the deposition of Coy B. Neal, who listened to a recording of the conversation between the pilot and the control tower. Neal stated that some transmissions with the control tower toward the later part of the flight did not resemble the voice of Gerald Sievers. Neal Deposition, at 66–67.

Faced with Beech's motion for summary judgment for the second time, plaintiff attempts to meet her burden under Fed.R.Civ.P. 56(e) by directing the Court's attention to an Airworthiness Directive by the Federal Aviation Administration concerning Beech Model 200 (Serial Numbers BB 2–250). 42 Fed.Reg. 123 (June 27, 1977). The Directive requires "rerigging of the ailerons to redistribute wing air loads. This action will assure that the wings carry the 50 feet/second gust design loads, and have a factor of safety sufficient to comply with the regulatory requirements." 42 Fed. Reg. 123 (page 32523). Plaintiff has also introduced a Federal Aviation Administration computer printout showing numerous defects in certain tested King Air 200 aircraft. In addition, plaintiff argues that the aircraft exhibited a history of design engineering and/or manufacturing-based malfunctions. The difficulty with the plaintiff's evidence is that it falls short of what is required to prove her claims of negligence and strict liability. Even if plaintiff is able to show that a defect existed, she must also prove a causal connection between such a defect and the crash. *Bernard.* For example, if plaintiff proves that the Airworthiness Directive was correct and the aircraft suffered from such a defect, plaintiff is further required to show a causal connection between that defect and the crash. Plaintiff has failed to introduce any evidence indicating a causal connection between any alleged defect and the crash. The Court is cognizant of plaintiff's difficulty in her endeavor to discover evidence, considering that the aircraft was totally demolished in the crash. However, the Court is equally aware that negligence and strict liability claims cannot be based solely on conjecture and speculation as to the abstract possibility that an alleged defect caused the aircraft to crash. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946 (9th Cir. 1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979); *McBride v. Proctor & Gamble Manufacturing Co.,* 300 F.Supp. 1150 (E.D.Tenn.1969); *Amick v. Gooding Amusement Co.,* 248 F.Supp. 782 (D.S.C.1966). A defendant's negligence is never presumed from an accident alone; instead, it must be proved by either direct or circumstantial evidence, or both. A jury is not permitted to speculate or guess as to the proximate cause of an accident. There must be evidence of a material and substantial nature from which negligence can be determined. *See McBride v. Proctor & Gamble Manufacturing Co.,* 300 F.Supp. at 1151. Similarly, plaintiff must show a causal connection between any alleged defect and the injury in order to recover on a theory of strict liability. *Bernard,* 614 F.2d at 1078. Plaintiff has had ample opportunity to utilize the various discovery devices provided to her by the Federal Rules of Civil Procedure. The Court has previously continued the trial date of this matter in order that the plaintiff may complete further discovery. As indicated by the voluminous record in this case, plaintiff has completed extensive discovery. Plaintiff does not oppose this motion for summary judgment on the basis of a hope that some evidence might be developed at trial. *See Society of New York Hospital v. Associated Hospital Service of New York,* 367 F.Supp. 149, 155 (S.D.N.Y. 1973). Discovery is complete; any evidence to be discovered has been found. Despite plaintiff's extensive discovery, she has been unable to uncover any evidence of a causal connection between any alleged defect and the accident.

Plaintiff, cognizant of her lack of evidence, contends that the doctrine of *res ipsa loquitur* is applicable. She argues that because the doctrine does apply, "plaintiff need not identify a specific mechanical malfunction in order to prevail." Plaintiff's *Memorandum in Opposition to the Renewed Motion for Summary Judgment as Proffered by the Defendant Beech Aircraft Corporation* (filed June 5, 1980). Plaintiff concludes that summary judgment is inappropriate and this case should be decided by the jury. This Court disagrees with plaintiff's argument that the doctrine of *res ipsa loquitur* may be used to relieve plaintiff of her responsibility of establishing a causal connection, because the doctrine is inapplicable to the facts of the instant case.

■■ "Under Louisiana law, *res ipsa loquitur* is a rule of evidence which assists the plaintiff in carrying his burden of proof by supplying him with an inference of negligence in certain carefully defined circumstances. *Boudreaux v. American Insurance Co.*, 262 La. 721, 264 So.2d 621 (1972)." *Waterbury v. Byron Jackson, Inc.*, 576 F.2d 1095, 1099 (5th Cir. 1978). The Louisiana Supreme Court has recently stated:

> Res ipsa loquitur is merely a rule of circumstantial evidence whereby negligence is inferred on the part of the defendant because the facts indicate such to be the most probable cause of injury. The real test of applying res ipsa loquitur is: Do the facts of the controversy suggest negligence of the defendant, rather than some other factor, as the most plausible explanation of the accident? Application of the principle is defeated if an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence.
>
> *Walker v. Union Oil Mill, Inc.*, 369 So.2d 1043, 1048 (La.1979).

The doctrine is applicable where it is shown: (1) that the defendant had exclusive control over the instrumentality causing the injury; (2) that the cause of the accident which resulted in damages is more properly within the knowledge of the defendant; and (3) that all the facts and circumstances indicate that the negligence of the defendant, rather than the negligence of others, is the most likely cause of the accident. *Boudreaux v. American Insurance Co.*, 264 So.2d at 627–29; *Narcisse v. Fontcuberta*, 359 So.2d 1342 (La.App. 4th Cir. 1978).

■ In the instant case, plaintiff has had difficulties meeting each of the above requirements. First, plaintiff cannot claim that the aircraft was in the exclusive control of Beech. Gerald Sievers, as the pilot of the aircraft, exercised substantial control over the aircraft. Second, plaintiff must show that Beech had superior knowledge concerning the accident. Since the aircraft left Beech in 1975, the owner, Tidewater,

and its employees were in a superior position to be aware of problems with the aircraft. Finally, the circumstances in the instant case do not indicate that the negligence of the defendant, Beech, is the most likely cause of the accident. There is a reasonable and plausible alternative explanation as to the cause of the accident. The decedent, Gerald Sievers, could have been negligent in the operation of the aircraft or could have been negligent in permitting one of his passengers to operate the aircraft. The facts of this accident do not suggest that the negligence of the defendant, rather than the negligence of the pilot, is the most plausible explanation of the accident. Therefore, the third requirement of the doctrine is not satisfied. Because plaintiff has failed to satisfy the requirements of the doctrine of *res ipsa loquitur*, the Court holds that the doctrine is inapplicable.

Plaintiff relies on *Higginbotham v. Mobil Oil Corp.*, 545 F.2d 422 (5th Cir. 1977), *rev'd on other grounds*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) (*Higginbotham*) to support her position that the doctrine of *res ipsa loquitur* is applicable. Plaintiff cites the following quote from *Higginbotham* in support of her contention that the doctrine is applicable to air crash matters:

> By 1964 one distinguished commentator could write that "all the later cases" support the application of res ipsa to airplane crashes. W. Prosser, Law of Torts, § 39, at 220–21 (3rd Ed. 1964); *cf.* Annotation, 6 A.L.R.2d 528. Our court has only recently implied that this use of *res ipsa* is well settled.
>
> *Higginbotham*, 545 F.2d at 429–30 (citations omitted).

This Court agrees with plaintiff that the doctrine is applicable to air crash matters; however, plaintiff suggests that the doctrine is applicable against the manufacturer in *every* air crash. This suggestion is unfounded. The applicability of the doctrine of *res ipsa loquitur* must be decided in light of the facts of each case. Plaintiff theorized that this is a case in which the doctrine should apply. Her argument in support of her theory is as follows: Aircraft crashes

only occur for one of the following reasons: (1) weather conditions; (2) negligent maintenance of the aircraft; (3) pilot error; and (4) mechanical difficulties either caused by defective design or manufacture of the aircraft. In the instant case, the weather conditions were excellent the night of the crash, so that factor has been eliminated. The maintenance of the aircraft is not at issue as evidenced by the dismissal of the companies who performed the maintenance work. Pilot error can be eliminated because Gerald Sievers was an experienced pilot. Therefore, plaintiff argues, the only plausible explanation for the accident is defective design or manufacture, thus the doctrine of *res ipsa loquitur* should apply. This argument is flawed. Its major fallacy is the illogical assumption that an experienced pilot cannot be negligent. This assumption is clearly not supported by reason or the uncontroverted facts in this case. Therefore, the Court must reject this argument.

*Higginbotham* is the only case plaintiff cites in support of her theory that the doctrine of *res ipsa loquitur* is applicable to the instant case. However, a close reading of *Higginbotham* does not support her theory. *Higginbotham* involved four consolidated actions for damages for the death of the pilot and three passengers of a helicopter that crashed in the Gulf of Mexico. The passengers sought recovery from Mobil Oil Company (Mobil), who owned and operated the helicopter, and Bell Helicopter Company (Bell), who manufactured it. The pilot sued only Bell. The district court held that no case was made against Bell. The district court further held that the doctrine of *res ipsa loquitur* was applicable in the passengers' action against Mobil. Mobil appealed, contending that the doctrine was inapplicable because plaintiffs introduced, along with their evidence against Mobil, evidence of Bell's responsibility for the crash. Mobil argued that the third requirement of the doctrine of *res ipsa loquitur* was not satisfied because the circumstances surrounding the accident did not render it more probable that the accident was due to Mobil's negligence, than that of the other defendant. The Court of Appeals rejected Mobil's argument reasoning that:

Every possible alternative cause of the injury need not be totally excluded for res ipsa to apply; all that is necessary is that the likelihood of other causes be sufficiently reduced so that the fact finder may reasonably conclude from a preponderance of the evidence that the fault, if any, is attributable to the party against whom the doctrine is employed.

*Higginbotham*, 545 F.2d at 430.

The Court of Appeals explained that Mobil's potential liability was only considered after concluding that plaintiffs had not carried their burden against Bell. The instant case is distinguishable. Here, the pilot's representative is bringing this action against the manufacturer, Beech. The likelihood of other causes, specifically pilot error, has not been sufficiently reduced so that the fact finder may reasonably conclude from a preponderance of the evidence that the fault is attributable to Beech. Thus, an analysis of *Higginbotham* does not support plaintiff's theory that the doctrine of *res ipsa loquitur* is applicable to her suit.

The instant case is similar to *British Airways Bd. v. Boeing Co.*, 585 F.2d 946 (9th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979) (*Boeing*), in which the owner and operator of an aircraft that crashed brought suit against the manufacturer of the plane, alleging negligent design and manufacture, breach of express and implied warranties, and strict tort liability. Defendant manufacturer moved for summary judgment based on substantial evidence that the cause of the crash was the effect of severe air turbulence encountered when the plane's pilot flew close to Mt. Fuji at too low an altitude. Plaintiff countered that a pre-existing fatigue crack was the cause of the crash. The Court of Appeals affirmed the district court's entering of summary judgment for the manufacturer holding that plaintiff failed "to produce specific facts showing, or even creating an inference, that the crack *did* lead to the accident in question." *Boeing*, 585 F.2d at 952 (emphasis in original). In the instant case, plaintiff has also been

unable to produce specific facts showing, or even creating an inference, that the alleged defects caused the accident.

 "The evidence offered in opposition to the motion for summary judgment must be 'significantly probative' as to any fact claimed to be disputed." *Ruffin v. County of Los Angeles,* 607 F.2d 1276, 1280 (9th Cir. 1976). *See also Poirier v. Carson,* 537 F.2d 823 (5th Cir. 1976). Where it is clear from the evidence presented at the hearing on a motion for summary judgment that the movant would be entitled to a directed verdict were the case to proceed to trial, summary judgment ordinarily should be granted. Therefore, because this Court finds that plaintiff has presented no evidence on which the trier of fact could legally support her claims of negligence and strict liability, the Court will grant summary judgment dismissing plaintiff's claims.