907 F.2d 1138
 30 Fed. R. Evid. Serv. 716
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Elizabeth HOBAN, as administratrix and personal
representative of the estate of James Patrick
Hoban, deceased, Plaintiff-Appellant,
v.
GRUMMAN CORPORATION, Defendant-Appellee.
 No. 89-2441.
 United States Court of Appeals, Fourth Circuit.
 Argued April 2, 1990.
Decided June 12, 1990.
Rehearing and Rehearing In Banc Denied July 10, 1990.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. J. Calvitt Clarke, Jr., District Judge. (CA-88-615-N)
 Bruce Arthur Blakeman, Robert M. Blakeman & Associates, Valley Stream, N.Y. (Argued), for appellant; Robert M. Blakeman, Robert M. Blakeman & Associates, Valley Stream, N.Y., on brief.
 James M. Fitzsimons, Mendes & Mount, Los Angeles, Cal., (argued), for appellees; Frank J. Chiarchiaro, Mendes & Mount, New York City, Bruce T. Bishop, Randy D. Singer, William M. Furr, Willcox & Savage, P.C., Norfolk, Va., on brief.
 E.D.Va., 717 F.Supp. 1129.
 AFFIRMED.
 Before DONALD RUSSELL, PHILLIPS and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal arises from a wrongful death action brought by Elizabeth Hoban (Hoban), as administratrix of the estate of Lt. James Patrick Hoban, a Navy pilot killed in a plane crash, against the manufacturer of the plane, Grumman Corporation and Grumman Aerospace Corporation (together, Grumman), seeking $150 million in damages. Hoban claimed liability because of alleged negligent manufacture and design, strict product liability in manufacture and design, and breach of warranty. After the district court dismissed Hoban's strict liability causes of action (which are not the subject of this appeal), the case went to trial. After the jury failed to reach a verdict, the court granted Grumman's motion for directed verdict on the remaining causes of action. The court found that Hoban's expert witness, Dr. Frederick L. Ryder, was not qualified to testify and, alternatively, if allowed to testify, that his testimony was unsupported by the evidence. Upon Hoban's appeal of these holdings, we affirm.
 
 
 2
 * On May 22, 1986, Lt. Hoban was assigned to fly an A-6E aircraft, which was manufactured by Grumman and had been delivered one week before, from Virginia Beach to the United States Aircraft Carrier John F. Kennedy, located in the Caribbean Sea. Although Instrument Flight Rules (IFR), which were in effect, mandated "a climb as rapidly as possible to 1000 feet and [then] turn," Lt. Hoban performed a "low transition maneuver" by climbing only 100 feet through the end of the runway and retracting the plane's landing gear, flaps and slats, creating what is known as a "clean configuration." At the end of the runway, he turned sharply right in a 60 to 80 degree bank, and reached an altitude of at most 300-500 feet. In the middle of the turn, he reduced power from maximum to idle, which is 70% power. Both pilots then ejected and, because of the plane's sharp bank, were propelled toward the ground and killed. The plane crashed only 90 seconds into the flight.
 
 
 3
 On May 2, 1988, Hoban brought this action in the United States District Court for the Eastern District of New York against Grumman, alleging five causes of action based on negligent manufacture and design, strict product liability in manufacture and design, and breach of warranty. Hoban alleged that the right engine of the plane caught fire as a result of a manufacturing defect in the fuel distribution system. Grumman successfully moved to transfer venue to the United States District Court for the Eastern District of Virginia, which dismissed the strict liability cause of action on the ground that Virginia law does not recognize such an action. The trial began on April 11, 1989, but the jury was unable to reach a verdict. Subsequently, the court granted Grumman's renewed motion for directed verdict, concluding that Hoban had "failed to prove the existence of a defect in the aircraft or a causal relationship between any alleged defect and the crash."
 
 
 4
 At trial, Hoban's case focused primarily on evidence indicating a fire in the plane. Hoban presented evidence that the fuel valve for the right engine was found in the off position; according to the NATOPS Manual, which is the pilot's instruction manual for the A-6E, shutting down the engine by turning off the fuel valve is standard procedure if there is a fire in the plane. Hoban introduced the testimony of eyewitnesses, who saw flames at the rear of the aircraft before the crash, and other witnesses, who stated that they heard the plane become silent or quieter before the crash. Hoban argues that the pilots' ejection is further evidence of a fire in the aircraft, because the NATOPS Manual instructs the pilot to eject where there is a positive indication of fire.
 
 
 5
 Hoban relied greatly on the testimony of Dr. Ryder, an engineer, who asserted that a fire in the fuel system of the right engine was caused by a manufacturing defect and produced the crash. The district court, however, while allowing this testimony to be given, found that Dr. Ryder was not qualified to testify as an expert in the field of jet engines and that he had not conducted investigations that would make his testimony helpful to the jury. Alternatively, the court found that his testimony was unsupported by the evidence. As a result, the court struck Dr. Ryder's testimony.
 
 
 6
 Grumman introduced testimony of Commander John Meister of the U.S. Navy, who had conducted an investigation of the crash that resulted in the Judge Advocate General's Manual Investigative Report (JAG Report). The JAG Report concluded that the "cause of this mishap is pilot error." Finding that the engines were fully functional at the time of impact and that there was no evidence of any pre-impact fire, Cmdr. Meister deduced from simulated flight patterns on the Navy's training simulator that Lt. Hoban's "low transition maneuver," radical turn and reduced throttle combined to produce an aerodynamic stall, in which the aircraft lost lift in its wings and fell. Captain Robert Ferguson testified that he likewise performed simulated flight analyses and believed that pilot error leading to a stall caused the crash. Even assuming there was a fire, both Cmdr. Meister and Captain Ferguson testified that the plane can be flown properly on one engine and that flying on a single engine would not cause the plane to bank if it were flown properly.
 
 II
 
 7
 Hoban first argues that the district court erred in granting Grumman's motion for directed verdict on Hoban's negligence and warranty claims. We review de novo the district court's holding in ascertaining whether there is "but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In the process, we credit the evidence of Hoban and draw all justifiable inferences in her favor. Shelton v. Jones, 356 F.2d 426, 428 (4th Cir.1966).
 
 
 8
 Under Virginia law, manufacturers of defective products may be liable on theories of negligence and breach of implied warranty of merchantability. A wrongful death claimant may recover for negligence and breach of warranty under Virginia law by establishing
 
 
 9
 (1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and
 
 
 10
 (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands.
 
 
 11
 Bly v. Otis Elevator Co., 713 F.2d 1040, 1043 (4th Cir.1983) (citing Logan v. Montgomery Ward & Co., Inc., 216 Va. 425, 428, 219 S.E.2d 685, 687 (1975)). A product may be "unreasonably dangerous" if defective in assembly or manufacture. Id.
 
 
 12
 Hoban argues that the evidence shows that there was a fire in the plane which resulted from a leak caused by a defect in the fuel line. While Hoban provides some, albeit contradicted, evidence of a fire in the plane's right engine, which we must accept as true, Hoban offers no evidence that the fire was caused by a manufacturing defect other than the testimony of Dr. Ryder. However, Dr. Ryder's testimony fails to show how the leak resulted from a manufacturing defect, how this leak caused a fire in the engine, and how the fire in the engine led to the crash. While it is true that circumstantial evidence may be sufficient to permit a jury to reasonably infer negligence or warranty liability, "such circumstantial evidence must be sufficient to establish that the result alleged is a probability rather than a mere possibility." Southern States Coop., Inc. v. Doggett, 223 Va. 650, 657, 292 S.E.2d 331, 335 (1982) (citation omitted). As a result, negligence or warranty claims "cannot be based solely on conjecture and speculation as to the abstract possibility that an alleged defect caused the aircraft to crash.... A jury is not permitted to speculate or guess as to the proximate cause of an accident." Sievers v. Beechcraft Mfg. Co., 497 F.Supp. 197, 201 (E.D.La.1980) (citations omitted). Dr. Ryder's testimony makes the existence of a defect only a possibility, little more than conjecture or speculation. And without Dr. Ryder's opinion, appellant has no theory upon which to rest her case, and, as we hold below, the trial court did not abuse its discretion in striking his testimony. Therefore, we conclude that the lower court correctly granted Grumman a directed verdict on Hoban's negligence and warranty claims.[1]
 
 II
 
 13
 Hoban next argues that the district court erred in ruling that Dr. Ryder was not qualified to testify in the fields of aerodynamics, jet engines and jet fuel systems, or, in the alternative, striking Dr. Ryder's testimony as unsupported by the evidence. We disagree.
 
 
 14
 Rule 702 of the Federal Rules of Evidence states:
 
 
 15
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 
 16
 The test is whether "[o]n this subject can a jury from this person receive appreciable help." Wigmore, Evidence Sec. 1923 at 21 (3d ed. 1940) (emphasis in original). An expert may be qualified through "knowledge, skill, experience, training, or education." It is clear that a trial judge's decision on the qualification of an expert may be reversed only if an abuse of discretion. Friendship Heights Assoc. v. Vlastimil Koubek, 785 F.2d 1154, 1159 (4th Cir.1986); Salem v. United States Lines Co., 370 U.S. 31, 35 (1962). The cases indicate this "standard ... will rarely be met." Weinstein's Evidence, p 702 at 702-45 to 48 (1988).
 
 
 17
 The district court conceded that an expert witness is not required to have direct experience with the precise device or machine alleged to be defective, Martin v. Fleissner GmbH, 741 F.2d 61, 64 (4th Cir.1984), but the court noted that Dr. Ryder had no such experience with the A-6E's Pratt & Whitney engines or fuel systems. Ultimately, the court found that Dr. Ryder did not even have basic knowledge, education or experience (direct or indirect) in the area of jet engines or fuel system design nor was he familiar with the general engineering principles involved. As a result, the court concluded that his testimony would not assist the jury in the case. Hoban redundantly asserts that direct experience with the precise device alleged to be defective is not required, which the district court did not dispute, but Hoban is unable to provide relevant evidence showing how Dr. Ryder is sufficiently qualified in the area of jet engines or fuel system design to assist the jury. As a result, we cannot say that the district court abused its discretion in striking Dr. Ryder's testimony.[2]
 
 III
 
 18
 For the above reasons, the ruling of the lower court is
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Because we uphold the lower court's holding that Hoban failed to present evidence of a manufacturing defect, we need not address Grumman's alternative claim that assumption of the risk and contributory negligence also preclude liability
 
 
 [2]
 Because we affirm the lower court's finding on Dr. Ryder's lack of qualifications, we do not reach the court's alternative holding that Dr. Ryder's testimony was unsupported by the evidence